**FILED**

**NOV 2 9 2007**

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF

COLUMBIA

**OSCAR NOEL FUENTES**
    Petitioner,

vs.

ATTORNEY GENERAL FOR THE
"UNITED STATES",

and

HARLEY G. LAPPIN, Dir.,
FEDERAL BUREAU OF PRISONS,

    Respondent(s).

Case: 1:07-cv-02158
Assigned To : Huvelle, Ellen S.
Assign. Date : 11/29/2007
Description: Habeas Corpus-2255

\*    JUDICIAL NOTICE

\*    IN THE NATURE OF

\*    RULE 201(d) OF THE

\*    FEDERAL RULES OF EVIDENCE

\*

\*

BEFORE THIS HONORABLE COURT:

    NOW COMES, Oscar Noel Fuentes, in want of counsel, Petitioner in the above captioned cause, and for the instant motion to request 'Judicial Notice' in the nature of Rule 201(d) of the Federal Rules of Evidence, shows this court the following:

1.

    That the Petitioner requests the court to take 'Judicial Notice' of a certain excerpt from the United States Government's publication, which is specifically, the "Report of the Interdepartmental Committee for the Study of Jurisdiction Over Federal Areas within the [several sovereign] states."

1. Judicial Notice – Rule 201(d)

# Jurisdiction Over Federal Areas Within The States: Parts I & II



This is the 'Report of the Interdepartmental Committee For The Study of Jurisdiction Over Federal Areas Within the States'. Part I: *The Facts and Committee Recommendations* and Part II: *A Text of the Law of Legislative Jurisdiction*. Eight departments and twenty-five agencies provided 'information' to this committee, a few being the; Departments of Defense, Justice, Interior, State, Treasury, Commerce, Labor plus the Atomic Energy, Federal Communications and Federal Power Commissions and was submitted to the Attorney General and transmitted to the President, April 1956 by the United States Government Printing Office, Washington.

This is an analysis of the problems of jurisdiction related to federally owned property within the States. Part I (250 pages), is a 'factual report with recommendations for changes in Federal agency practice, and in Federal and State laws. Part II (349 pages), discusses the law applicable to Federal jurisdiction over land owned in the States. Of special interest is the information in Appendix B which includes the texts of principal State and Federal constitutional provisions and statutes related to jurisdiction, set forth for each state. Part II is a 'compilation' of the court decisions and legal opinions weighted in the course of the report by the committee. This also includes a chapter that delineates the 'Areas Not Under Legislative Jurisdiction'.

Petitioner declares under penalty of perjury in the nature of 28 U.S.C.S. § 1746(1), that the following publication entitled JURISDICTION OVER FEDERAL AREAS WITHIN THE STATES, was transcribed, due to the inability to be reproduced.

Dated on this 19 day of Nov , 2007

Oscar Noel Fuentes, - Petitioner - Pro-se.

"The White House,
Washington, April 27, 1956

Dear Mr. Attorney General:

I am herewith returning to you, so that it may be published and receive the widest possible distribution among those interested in Federal real property matters, Part I of the Report of the interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the States. I am impressed by the well-planned effort which went into the study underlying this report and by the soundness of the recommendations which the report makes.

It would seem particularly desirable that the report be brought to the attention of the Federal administrators of real properties, who should be guided by it in matters related to legislative jurisdiction, and to the President of the Senate, the Speaker of the House of Representatives, and appropriate State officials, for their consideration of necessary legislation. I hope you will see to this. I hope, also, that the General Services Administration will establish as soon as may be possible a central source of information concerning the legislative jurisdictional status of Federal properties and that that agency, with the Bureau of the Budget and the Department of Justice, will maintain a continuing and concerted interest in the progress made by all Federal agencies in adjusting the status of their properties in conformity with the recommendations made in the report.

The members of the Committee and the other officials , Federal and State, who participated in the study, have my appreciation and congratulations on this report. I hope they will continue their good efforts so that the text of the law on the subject of legislative jurisdiction which is planned as a supplement will issue as soon as possible.


    Sincerely,
    Dwight D. Eisenhower.

    The Honorable Herbert Brownell, Jr.,
    The Attorney General, Washington, D.C."


and

4. Judicial Notice — Rule 201(d)

## LETTER OF SUBMISSION

INTERDEPARTMENTAL COMMITTEE FOR THE STUDY OF JURISDICTION OVER
FEDERAL AREAS WITHIN THE STATES
June 17, 1957

Dear Mr. Attorney General:

 With the encouragement of the President, the understanding aid of you and the heads of the other Federal agencies represented on the Committee, and the invaluable assistance of the Attorney General of the several States and of the principal law officers of nearly all Federal agencies, the Committee now has completed, and herewith submits, the final portion of its report, subtitled "Part II, A Text of the Law of Legislative Jurisdiction."

 This "Part II" supplements the portion of the Committee's report which you transmitted to the president on April 27, 1956. With its submission the work assigned to the Committee has been completed, and it is recommended that the Committee be dissolved.

    Respectfully submitted,
    PERRY W. MORTON,
    Assistant Attorney General (Chairman).

    ROBERT DECHERT,
    General Counsel, Department of Defense (Vice Chairman).

    HENRY H. PIKE,
    Associate General Counsel, General Services Administration (Secretary).

    ARTHUR B. FOCKE,
    Legal Advisor, Bureau of Budget.

    ELMER F. BENNETT,
    Solicitor, Department of the Interior.

    ROBERT L. FARRINGTON,
    General Counsel, Department of Agriculture.

    PARKE M. BANTA,
    General Counsel, Department of Health, Education, and Welfare.

    GUY H. BIRDSALL,
    General Counsel, Veterans Administration.

LETTER OF TRANSMITTAL

Office of the Attorney General,
Washington, DC, June 28, 1957.

Dear Mr. President:

The Interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the States now has submitted the second, and final, part of its report, a text of the law of legislative jurisdiction over such areas.

This exhaustive and analytical exposition of the law in this hitherto little explored field is a valuable supplement to the first part of the report, the compilation of facts, with recommendations, which received your recommendation in April 1956, and constitutes a major addition to legal bibliography.

Together, the two parts of this committees report and the full implementation of its recommendations will provide a basis for reversing an many areas the swing of "the pendulum of power"***from our states to the central government, to which you referred in your address to the Conference of State Governors on June 25, 1957.

The excellence of the work of the Committee reflects great credit upon its Chairman and members. Also specially noteworthy is the splendid assistance which the Committee received from the attorneys general of the several States, the general counsels of Federal agencies, and other State and Federal officials.

With the submission of this second part of its report the Committee has completed its work and recommends that it be dissolved. Since the Departments and other permanent agencies of the Federal Government now can carry out directions which you have issued based upon the work of the Committee, I join in this recommendation.

Respectfully,
Herbert Brownell, Jr.

6. Judicial Notice – Rule 201(d)

LETTER OF ACKNOWLEDGEMENT

The White House
Washington, July 8, 1957

Dear Mr. Attorney General:
    I have taken note of the final report (Part II) which you transmitted to me, rendered by the Interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the States. It is my understanding that the report is to be published and distributed, for the purpose of making available to Federal administrators of real property, Federal and State legislators, the legal profession, and others, this text of the law of legislative jurisdiction in these areas.
    In view of the fact that the work of the Committee is complete, and since other departments and agencies of the Government now have clear direction for turning this work into permanent gains in improved Federa-State relations, the Interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the States is hereby dissolved.
    Chairman Perry W. Morton and the members of this Committee have my congratulations and sincere appreciation of their service to our country in bringing to light the facts and law in this much neglected field. This monumental work, culminating three years of exhaustive effort, lays an excellent foundation for allocating to the States some of the functions which under our Federal-State system should properly be performed by State Governments.

        Sincerely,
        Dwight Eisenhower

        The Honorable Herbert Brownell, Jr.,
        The Attorney General, Washington, D.C.

7. Judicial Notice - Rule 201(d)

# PREFACE

The Interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the States was formed on December 15, 1954, on the recommendation of the Attorney General approved by the President and the Cabinet. The basic purpose for which the committee was founded was to find means for resolving the problems arising out of <u>jurisdictional status</u> of Federal lands. Addressing itself to this purpose, the Committee; with assistance from all Federal agencies interested in the problem (a total of 33 agencies), from State Attorney General, and from numerous other sources, prepared a report entitled <u>Jurisdiction over Federal Areas Within the States, Part I, The Facts and Committee Recommendations</u>. This report, approved by the President on April 27, 1956, set out the findings of the Committee and recommended changes in Federal and State Law, and in Federal agencies' practices, designed to eliminate existing problems arising out of <u>legislative jurisdiction</u>. It included two appendices.

The Committees research, involved a general survey of the jurisdictional status of all federally owned real property in the 48 States, and a detailed survey of the status of individual such properties in the States of Virginia, Kansas, and California. These three named States were selected as containing Federal real properties representative of such properties in all the States. Information was procured concerning the practices and problems related to legislative jurisdiction of the 23 Federal Agencies controlling real property, and of the advantages and disadvantages of the several legislative jurisdictional statute for the various purposes for which federally owned land is used. This information is reflected and analyzed in the several chapters of Part I of the report, and is summarized in Appendix A of the same part.

The Committees study included a review of the policies, practices, and problems of the 48 States related to legislative jurisdiction. Information concerning these matters similarly is reflected and analyzed in various portions of Part I of the report, with Chapter V of the part being entirely devoted to the laws and problems of States related to legislative jurisdiction. Also, the texts of State (and Federal) constitutional provisions and statutes related to jurisdiction in effect as of December 31, 1955, are gathered in Appendix B of Part I.

The major conclusions of the Committee, set out in Part I of the report, which, of course, are applicable only to the 48 States to which the Committee study extended, and do not apply to present Territories or the District of Columbia, are to the effect that in the usual case the Federal Government should not receive or retain any of the State's Legislative Jurisdiction within federally owned areas, that in some special cases (where general law enforcement by Federal authorities is indicated) the Federal Government should receive or retain legislative jurisdiction only concurrently with the States, and that in any case, the Federal Government should not receive or retain any of the State's legislative jurisdiction with respect to taxation, marriage, divorce, descent and distribution of property, and a variety of other matters, specified in the report, which are ordinarily the subject of State control.

The conclusions reached by the Committee were, of course, made only after an appraisal of the facts adduced during the study in the light of applicable law, including the great body of decisions handed down by courts, and opinions rendered by governmental legal officers, Federal and State, interpretative of situations affected by legislative jurisdiction.

8. Judicial Notice — Rule 201(d)

Recommendations made by the Committee, based on the conclusions indicated above and on certain subsidiary findings, now constitute the policy of the Executive branch of the Federal Government, and are being implemented by Federal agencies to the extent possible under existing law. However, full implementation of these recommendations must await the enactment of certain suggested Federal and State legislation.

In the course of its study, the Committee ascertained the existence of serious lack of legal bibliography on the subject-matter of its interest. With the concurrence of the Attorney General of the United States and the encouragement of the President, it has proceeded with the publication of this Part II of its report, a compilation of the court decisions and legal opinions it weighed in the course of its study of the subject of Legislative jurisdiction.

## LAW OF LEGISLATIVE JURISDICTION

Legal Problems many.--In view of the vastness of Federal real estate holdings, the large variety of activities conducted upon them, and the presence on many areas of resident employees and other persons, it is to be expected that many legal problems will arise on or with respect to these holdings. In addition to the problems, normally encountered in administering and enforcing Federal laws, complicated by occasional conflict with overlapping State laws, the ownership and operation by the Federal Government of areas within the States, gives rise to a host of legal problems largely peculiar to such areas. They arise not only because of the fact of Federal ownership and operation of these properties, but also because in numerous instances, the Federal Government has with respect to such properties a special jurisdiction which excludes, in varying degrees. The Jurisdiction of the State over them, and which in other instances is, to varying extents, concurrent with that of the State.

## FEDERAL POSSESSION OF EXCLUSIVE JURISDICTION

By Constitutional consent.--This special jurisdiction which is often possessed by the United States, stems, basically, out of Article I, Section 8, Clause 17, of the Constitution of the United States, which provides, in legal effect, that the Federal Government shall have exclusive legislative jurisdiction over such area, not exceeding 10 miles square, as may become the seat of the Government, with the consent of the State involved, for various Federal purposes. It is the latter part of the clause, the part which has been emphasized, with which this study is particularly concerned. There is a general public awareness of the fact that the United States Government exercises all governmental authority over the District of Columbia, by virtue of power conferred upon it by a clause of the Constitution. There is not the same awareness that under another provision of this same clause, the United States has acquired over several thousand areas within the States, some or all of those powers, judicial and executive as well as legislative, which under our Federal-State system of government, ordinarily are reserved to the States.

BY Federal reservation or State cession. For many years after the adoption of the Constitution, Federal acquisition of State-type legislative jurisdiction occurred only by direct operation of Clause 17. The clause was activated through the enactment of State statutes consenting to the acquisition by the Federal

9. Judicial Notice – Rule 201(d)

Government either of any land, or of specific tracts of land, within the State. In more recent years the Federal Government has in several instances made reservations of jurisdiction over certain areas in connection with the admission of State into the Union. A third means for transfer of legislative jurisdiction now has come into considerable use, whereby in a general or special statute a State makes a cession of jurisdiction to the Federal Government. Courts and other legal authorities have distinguished at various times between Federal legislative jurisdiction derived, on the one hand, directly from operation of Clause 17, and, on the other, from a Federal reservation or a State cession of jurisdiction. In the main, however, the characteristics of a legislative Jurisdiction status are the same, no matter by which of the three means the Federal Government acquired such status. Differences in these characteristics will be specially pointed out in various succeeding portions of this work.

Governmental Power, merged in Federal Government. -- Whether by operation of Clause 17, by reservation of jurisdiction by the United States, or by cession of jurisdiction by States, in many areas all governmental authority (with recent exceptions which will be noted) has been merged in the Federal Government, with none left in any State. By this means some thousands of areas have become Federal islands, sometimes called "enclaves,.. in many respects foreign to the States in which they are situated. In general, not State but Federal law is applicable in an area under the exclusive legislative jurisdiction of the United States, for enforcement not by State but Federal authorities, and in many instances not in State but in Federal courts. Normal authority of a State over areas within its boundaries, and normal relationships between a State and its inhabitants, are disturbed, disrupted, or eliminated, as to enclaves and their residents.

The State no longer has the authority to enforce its criminal laws in areas under the exclusive jurisdiction of the United States. Privately owned property in such areas is beyond the taxing authority of the State. It has been generally held that residents of such areas are not residents of the State, and hence not only are not subject to the obligations of residents of the State but also are not entitled to any of the benefits and privileges conferred by the State upon its residents. Thus, residents of Federal enclaves usually cannot vote, serve on juries, or run for office. They do not, as a matter of right, have access to State schools, hospitals, mental institutions, or similar establishments. The acquisition of exclusive jurisdiction by the Federal Government renders unavailable to the residents of the affected areas, the benefits of the law and judicial and administrative processes of the State, relating to adoption, the probate of wills and administration of estates, divorce and many other matters. Police, firefighting, notarial, coroner, and several similar services performed by or under the authority of a State, may not be rendered with legal sanction, in the usual case, in a Federal enclave.

## EXERCISE OF EXCLUSIVE FEDERAL JURISDICTION

Legislative authority little exercised. -- States do not have authority to legislate for areas under the exclusive legislative Jurisdiction of the United States, but the Congress has not legislated for these areas either, except in some minor particulars.

10. Judicial Notice - Rule 201(d)

**Exercise as to crimes.** -- With respect to crimes occurring within Federal enclaves, the Federal Congress has enacted the Assimilative Crimes Act, which adopts for enclaves, as Federal Law, the State law which is in effect at the time the crime is committed. The Federal Government also has specifically defined and provided for the punishment of a number of crimes which may occur in Federal enclaves, and in such cases that the specific provision, of course, supersedes the Assimilative Crimes Act.

Exercise as to civil matters. -- Federal legislation has been enacted authorizing the extension to Federal enclaves of the workmen's compensation and unemployment compensation laws of the States within the boundaries of which the enclaves are locate. The Federal Government also has provided that State law shall apply in suits arising out of the death or injury of any person by the neglect or wrongful act of another in an enclave. It has granted to the States, the right to impose taxes on motor fuels sold on Government reservations, and sales, use, and income taxes on transactions or uses occurring or services performed on such reservations. It has allowed taxation of leasehold interest in Federal property including property locate on Federal enclaves. And it has retroceded to the States jurisdiction pertaining to the administration of estates of residents of Veterans Administration facilities. This is the extent of Federal legislation enacted to meet the special problems existing on areas under the exclusive legislative jurisdiction of the United States.

## RULE OF INTERNATIONAL LAW

Extended by courts to provide civil law. -- The vacuum which would exist because of the absence of State law or Federal legislation with respect to civil matters in areas under Federal exclusive legislative jurisdiction, has been partially filled by the courts, through extension to these areas of a Rule of International Law, that when one sovereign takes over territory of another, the laws of the original sovereign in effect at the time of the taking which are not inconsistent with the laws or policies of the second continue in effect, as laws of the succeeding sovereign, until changed by that sovereign.

## ACQUISITION OF LEGISLATIVE JURISDICTION
## THREE METHODS FOR FEDERAL ACQUISITION OF JURISDICTION

**Constitutional Consent.** -- The Constitution gives express recognition to but one means of Federal acquisition of legislative jurisdiction -- by State consent under Article I, Section 8, Clause 17. The debates in the Constitutional Convention and State ratifying conventions leave little doubt that both the opponents and proponents of Federal exercise of exclusive legislative jurisdiction over the seat of government were of the view that a Constitutional provision such as Clause 17, was essential if the Federal Government was to have such jurisdiction. At no time was it suggested that such provision was unessential to secure exclusive Legislative jurisdiction to the Federal Government over the seat of government. While, as has been indicated in the preceding chapter, little attention was given in the course of the debates to Federal exercise of exclusive legislative jurisdiction over areas other than the seat of government. It is reasonable to assume that it was the general view that a special constitutional provision was essential to enable the United States to acquire exclusive

11. Judicial Notice - Rule 201(d)

legislative jurisdiction over any area. Hence, the proponents of exclusive legislative jurisdiction over the seat of the government and over federally owned areas within the States. defended the inclusion in the Constitution of a provision such as article I, Section 8, Clause 17. And in **United States v. Railroad Bridge Co.**, 27 Fed. Cas. 686, 693, No. 16,114 (C.C.N.D.III., 1855), Justice McLean suggested that the Constitution provided the sole mode for transfer of jurisdiction, and that if this mode is not pursued, no transfer of jurisdiction can take place.

State cession. -- However, in **Fort Leavenworth R.R. v. Lowe**, 114 U.S. 525 (1885), the United States Supreme Court sustained the validity of an act of Kansas ceding to the United States legislative jurisdiction over the Fort Leavenworth military reservation, but reserving to itself the right to serve criminal and civil process in the reservation and the right to tax railroad, bridge, and other corporations, and their franchises and property on the reservation. In the course of its opinion sustaining the cession of legislative jurisdiction, the Supreme Court said (p.540):

"We are here met with the objection that the Legislature of a State has no power to cede away her jurisdiction and legislative power over any portion of her territory, except as such cession follows under the Constitution from her consent to a purchase by the United States for some one of the purposes mentioned. If this were so, it could not aid the railroad company; the jurisdiction of the State would then remain as it previously existed. But aside from this consideration, it is undoubtedly true that the State, whether presented by her Legislature, or through a convention specially called for that purpose, is in competent to cede her political jurisdiction and legislative authority over any part of her territory to a foreign country, without the concurrence of the general government. The jurisdiction of the United States extends over all the territory within the States. And, therefore, their authority must be obtained, as well as that of the State within which the territory is situated, before any cession of sovereignty or political jurisdiction can be made to a foreign country.*** In their relation to the general government, the State of the Union stand in a very different position from that which they hold to foreign governments. Though the jurisdiction and authority of the general government are essentially different from those of the State, they are not those of different country. And the two, the State and general government, may deal with each other in any way they may deem best to carry out the purposes of the Constitution. It is for the protection and interest of the people generally of the United States, that forts, arsenals, and other buildings for public use are constructed within the States. As instrumentalities for the execution of the powers of the general government, they are, as already said, exempt from such control of the States as would defect or impair their use for those purposes. And if, to their more effective use, a cession of legislative authority and political jurisdiction by the State would be desirable, we do not perceive any objection to its grant by the Legislature of the State. Such cession is really as much for the benefit of the State as it is for the benefit of the United States."

Had the doctrine thus announced in **Fort Leavenworth R.R. v. Lowe**, supra, been known at the time of the constitutional Convention, it is not improbable that Article I, Section 8 , Clause 17, at least insofar as it applies to areas other than the seat of government, would not have been adopted. Cession as a method of transfer of jurisdiction by a State to the United States is now well established, and quite possibly has been the method of transfer in the majority of instances in which the Federal.....

Federal Reservation. -- In **Fort Leavenworth R.R. v. Lowe**, supra, the Supreme Court approved a second method not specified in the Constitution of securing legislative jurisdiction in the United States. Although the matter was not in issue in the case, the Supreme Court said (p.526):

"The land constituting the Reservation was part of the territory acquired in 1803, by cession from France, and, until the formation of the State of Kansas, and her admission into the Union, the United States possessed the rights of a proprietor, and had political dominion and sovereignty over it. For many years before that admission, it had been reserved from sale by the proper authorities of the United States for military purposes, and occupied by them as a military post. The jurisdiction of the United States over it during this time was necessarily paramount. But in 1861 Kansas was admitted into the Union upon an equal footing with the original States, that is, with the same rights of political dominion and sovereignty, subject like them only to the Constitution of the United States. Congress might undoubtedly, upon such admission, have stipulated for retention of the political authority, dominion and legislative power of the United States over the Reservation, so long as it should be used for military purposes by the government. That is, it could have excepted the place from the jurisdiction of Kansas, as so needed for the uses of the general government. But from some cause, inadvertence perhaps, or over-confidence that a recession of such jurisdiction could be had whenever desired, no such stipulation or exception was made."

Almost the same language was used by the Supreme Court of Kansas in **Clay v. State**, 4 Kan. 49 (1866), and another suggestion - of judicial recognition of this doctrine is to be found in an earlier case in the Supreme Court of the United States, **Langford v. Montieth**, 102 U.S. 145 (1880), in which it was held that when an act of Congress admitting a State into the Union, provides, in accordance with a treaty, that the lands of an Indian tribe shall not be a part of such State or Territory. The new State has no jurisdiction over them. "The enabling acts governing the admission of several of the States provided that exclusive jurisdiction over ceratin areas was to be reserved to the United States". In view of these developments, an earlier opinion of the United States Attorney General indicating that a State legislature, as distinguished from a State constitutional convention, had to give the consent to transfer jurisdiction specified in the Federal Constitution (12 Ops. A. G. 428 (1868)), would seem inapplicable to a Federal reservation of jurisdiction.

Since Congress has the power to create States out of Territories and to prescribe the boundaries of the new States, the retention of exclusive legislative jurisdiction over a federally owned area within the State at the time the State is admitted into the Union would not appear to pose any serious constitutional difficulties.

No Federal Legislative Jurisdiction without consent cession, or reservation. -- It scarcely needs to be said that unless there has been a transfer of jurisdiction

13. Judicial Notice - Rule 201(d)

(1) pursuant to Clause 17 by a Federal acquisition of land with State consent, or (2) by cession from the State to the Federal Government, or unless the Federal Government has reserved jurisdiction upon the admission of the State, the Federal Government possesses no legislative jurisdiction over any area within a State. Such jurisdiction being for exercise entirely by the State, subject to non-interference by the State with Federal functions, and subject to the free exercise by the Federal Government of rights, with respect to the use, protection, and disposition of its property.

## NECESSITY OF STATE ASSENT TO TRANSFER OF JURISDICTION
## TO FEDERAL GOVERNMENT

**Constitutional Consent.** -- The Federal Government cannot, by unilateral action on its part, acquire legislative jurisdiction over any areas within the exterior boundaries of a State. Article I, Section 8, Clause 17, of the Constitution, provides that legislative jurisdiction may be transferred to its terms, only whit the consent of the legislature of the State in which is located the area subject to the jurisdictional transfer. As was indicated in Chapter II, the consent requirement of Article I, Section 8, Clause 17, was intended by the framers of the Constitution to preserve the State Jurisdictional integrity against Federal encroachment.

**State cession or Federal reservation.** -- The transfer of legislative Jurisdiction pursuant to either of the two means not spelled out in the Constitution likewise requires the assent of the State in which is located the area subject to the jurisdictional transfer. Where legislative jurisdiction is transferred pursuant to a State cession statute, the State has quite clearly assented to the transfer of legislative jurisdiction to the Federal Government, since the enactment of a State cession statute is a voluntary act on the part of the legislature of the State.

The second method not spelled out in the Constitution of vesting legislative jurisdiction in the Federal Government, namely, the reservation of legislative jurisdiction by the Federal Government at the same statehood is ranted to a Territory, does not involve a transfer of legislative jurisdiction to the Federal Government by a State, since the latter never had jurisdiction over the area with respect to which legislative jurisdiction is reserved. While under the second method of vesting legislative jurisdiction in the Federal Government, the latter may reserve such jurisdiction without inquiring as to the wishes or desires of the people of the Territory to which statehood has been granted, nevertheless, the people of the Territory involved have approved, in at least a technical sense, such reservation. Thus, the reservation of legislative jurisdiction constitutes, in the normal case, one of the terms and conditions for granting statehood, and only if all of the terms and conditions are approved by a majority of the voters of the Territory, or by a majority of the Territorial legislature, is statehood granted.

## NECESSITY OF FEDERAL ASSENT

Express Consent Required by R.S. 355. -- Acquiescence, or acceptance, by the Federal Government, as well as by the State, is essential to the transfer of legislative jurisdiction to the Federal Government. When legislative jurisdiction is reserved by the Federal Government at the time statehood is granted, to a

14. Judicial Notice - Rule 201(d)

Territory, it is, of course, obvious that the possession of legislative jurisdiction meets with the approval of the Federal Government. When legislative jurisdiction is to be transferred by a State to the Federal Government either pursuant to Article I, Section 8, Clause 17, of the Constitution, or by means of a State cession statute, the necessity of Federal assent to such transfer of legislative jurisdiction has been firmly established by the enactment of the February 1, 1940, amendment to R.S. 355. While this amendment in terms specifies, requirement for formal Federal acceptance, prior to the transfer of exclusive or partial legislative jurisdiction, it also applies to the transfer of concurrent jurisdiction. The Supreme Court, in **Adams v. United States**, 319 U.S. 312 (1943), in the course of its opinion said (pp.314-315):

"Both the Judge Advocate General of the Army and the Solicitor of the Department of Agriculture have construed the 1940 Act as requiring that notice of acceptance be filed if the government is to obtain concurrent jurisdiction. The Department of Justice has abandoned the view of jurisdiction which prompted the institution of this proceeding, and now advises us of its view that concurrent jurisdiction can be acquired only by the formal acceptance prescribed in the Act. These agencies cooperated in developing the Act, and their views are entitled to great weight in its interpretation. *** Besides, we can think of no other rational meaning for the phrase "jurisdiction, exclusive or partial," than that which the administrative construction gives it. Since the govern merit had not accepted jurisdiction in the manner required by the Act, the federal court had no jurisdiction of this proceeding. In this view, it is immaterial that Louisiana statutes authorized the government to take jurisdiction, since at the critical time the jurisdiction had not been taken."

Former Presumption of Federal acquiescence of dissent. -- Even before the enactment of the 1940 amendment to R.S. 355, it was clear that a State could not transfer, either pursuant to Article I, Section 8, Clause 17, of the Constitution, or by means of a cession statute, legislative jurisdiction to the Federal Government without the latter's consent prior to the 1940 amendment to R.S. 355. However, it was not essential that the consent of the Federal Government be expressed formally or in accordance with, any prescribed procedure. Instead, it was presumed that the Federal Government accepted the benefits of a State enactment providing for the transfer of legislative jurisdiction. As discussed more fully below, this presumption of acceptance was to the effect that once a State legislatively indicated a willingness to transfer exclusive jurisdiction, such jurisdiction passed automatically to the Federal Government without any action having to be taken by the United States. However, the presumption would not operate where Federal action was taken, demonstrating dissent from the acceptance of proffered jurisdiction.

Presumption in transfers by cession. -- In **Fort Leavenworth R.R. v. Lowe**, supra, in which a transfer of legislative jurisdiction by means of a State cession statue was approved for the first time, the court said (p.528), that although the Federal Government had not in that case requested a cession of jurisdiction, nevertheless, "[a]s it conferred a benefit, the acceptance of the act is to be presumed in the absence of any dissent on their part." See also, **United States v. Johnston**, 58 F.Supp. 208, aff'd., 146 F.2d 268 (C.A.9,1944), cert. den., 324 U.S. 876, 38 Ops. A.G. 341 (1935). A similar view has been expressed by a number of courts to transfers of jurisdiction by cession. In some instances, however, the courts have indicated the existence of affirmative grounds supporting Federal acceptance of such transfers. In, **Yellowstone Park Transp. Co. v. Gallatin County**,

15. Judicial Notice - Rule 201(d)

31 F.2d 644 (C.A.9,1929), cert. den., 280 U.S. 555, it was stated that acceptance by the United States of a cession of jurisdiction by a State over a national park area within the State may be implied from acts of Congress providing for exclusive jurisdiction in national parks. See also **Columbia River Packers, Ass'n v. United States**, 29 F.2d 91 (C.A.9,1928), **United States v. Unzueta**, 281 U.S. 138 (1938).

**Presumption in transfers by constitutional consent.** -- Until recent years, it was not clear but that the consent granted by a State pursuant to Article I, Section 8, Clause 17, of the Constitution, would under all circumstances serve to transfer legislative jurisdiction to the Federal Government where the latter had "purchased" the area and was using it for one of the purposes enumerated in Clause 17. In **United States v. Cornell**, 25 Fed. Cas. 646, No. 14,867 (C.C.D.R.I., 1819), Justice Story expressed the view that Clause 17 is self-executing, and acceptance by the United States of the "benefits" of State consent statute was not mentioned as an essential ingredient to the transfer of legislative jurisdiction under Clause 17. In the course of his opinion in that case, Justice Story said (p.648):

"The constitution of the United States declares that Congress shall have power to exercise "exclusive legislation" in all "cases whatsoever", over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dock-yards and other needful buildings. When therefore a purchase of land for any of these purposes is made by the national government, and the state legislature has given its consent to the purchase, the land so purchased by the very terms of the constitution ipso facto falls within exclusive legislation of congress, and the state jurisdiction is completely ousted." [Italics added.]

As late as 1930, it was stated in **Surplus Trading Co. v. Cook**, 281 U.S. 647 (p.652), that:

"It has long been settled where lands fore such purpose [one of those mentioned in Clause 17] are purchased by the United States with the consent of the state legislature "the jurisdiction theretofore residing in the States passes," in virtue of the constitution provision, "to the United States," thereby making the jurisdiction of the latter the sole jurisdiction."[Italics added.]

The italicized portions of the quoted excerpts suggest that Article I, Section 8, Clause 17, of the Constitution, may be self-executing where the conditions specified in that clause for the, transfer of jurisdiction have been satisfied.

In **Mason Co. v. Tax Comm'n**, 302 U.S. 186 (1937), however, the Supreme Court clearly extended the acceptance doctrine, first applied to transfers of legislative jurisdiction by State cession statutes in **Fort Leavenworth R.R. v. Lowe**, supra, to transfers pursuant to Article I, Section, 8, Clause 17, of the constitution. The court said (p.207):

16. Judicial Notice - Rule 201(d)

"Even if it were assumed that the state statute should be construed to apply to the federal acquisitions here involved, we should still be met by the contention of the Government, that it was not compelled to accept, and has not accepted, a transfer of exclusive jurisdiction. As such a transfer rests upon a grant by the State, through consent or cession, it follows, in accordance with familiar principles applicable to grants, that the grant may be accepted or declined. Acceptance may be presumed in the absence of evidence of a contrary intent, but we know of no constitutional principle which compels acceptance by the United States of an exclusive jurisdiction contrary to its own conception of its interests."***

**What constitutes dissent.** -- Only in a few instances have the courts indicated what may constitute a "dissent" ( see, **Fort Leavenworth R.R. v. Lowe,** supra) by the Federal Government from a State's proffer of legislative jurisdiction. In **Mason Co. v. Tax Comm'n,** supra, the court concluded that a validation by Congress of contracts entered into by Federal administrative officials granting to State, officials certain authority with respect to schools, police protection, etc., reflected a Congressional intent not to accept the legislative jurisdiction offered to the Federal Government by the State by the latter's enactment of a consent statute. In a State case (**International Business Machines Corporation v. Ott**, 230 La. 666, 89 So.2d 193 (1956)), use by Federal installation of similar States services, with no indication of Congressional knowledge in the latter, was held to have negative Federal acceptance of jurisdiction proffered under a general consent and cession statute of the State. It may be noted that extension of this decision would put in doubt the status of many, if not most, Federal areas now considered to be under the legislative jurisdiction of the United States. In **Atkinson v. State Tax Commission**, 303 U.S. 20 (1933), the court indicated that the enforcement of the Oregon workmen's compensation law in Federal areas was incompatible with exclusive Federal legislative jurisdiction, and, since the Federal Government did not seek to prevent the enforcement of this law, the presumption of Federal acceptance of legislative jurisdiction was effectively rebutted.

17. Judicial Notice - Rule 201(d)

## CRIMINAL JURISDICTION

**Right of Defining and Punishing For Crimes: Exclusive Federal Jurisdiction.** --
Areas over which the Federal Government has acquired exclusive legislative
jurisdiction are subject to the exclusive criminal jurisdiction of the United
States. **Bowen v. Johnston**, 306 U.S. 19 (1939), **United States v. Watkins**, 22 F.2d
437 (N.D. Cal., 1927). That the States can neither define nor punish for crimes
in such areas is made clear in the case of **In re Ladd**, 74 Fed. 31 (C.C.N.D.,Neb.,
1896),(p.40):

    ***"The cession of jurisdiction over a given territory takes the latter from
within, and places it without, the jurisdiction of the ceding sovereignty. After
a state has parted with its political jurisdiction over a given tract of land, it
cannot be said that acts done thereon are against the peace and dignity of the
state, or are violations of its laws; and the state certainly cannot claim
jurisdiction criminally by reason of acts done at places beyond, or not within,
its territorial jurisdiction, unless by treaty or statute it may have retained
jurisdiction over its own citizens, and even then the jurisdiction is only over
the person as a citizen."***

The criminal jurisdiction of the Federalized Government extends to private
lands over which legislative jurisdiction has been vested in the Government, as
well, as to federally owned lands. **United States v. Unzeuta, supra,** see also
**Peterson v. United States**, 191 F.2d 154 (C.A. 9, 1951), sert denied 342 U.S. 885.
Indeed, the Federal Government's power derived from exclusive legislative
jurisdiction over an area may extend beyond the boundaries of the area, as may be
necessary to make exercise of the Government jurisdiction affective; thus, the
Federal Government may punish a person not in exclusive jurisdiction are for
concealment of his knowledge concerning the commission of a felony within the area.
**Cohens v. Virginia**, 6 Wheat. 264, 426-429 (1821). In **Hollister v. United States**,
145 Fed. 773 (C.A.8, 1906) the court said (p.777):

    "Instances of relinquishment and acceptance of criminal jurisdiction by state
Legislatures and the national Congress, respectively, over forts, arsenals, public
buildings, and other property of the United States situated within the states, are
common, and their legality has never, so far as we know, been questioned."

18. Judicial Notice - Rule 201(d)

On the other hand, while the Federal Government has power under various provisions of the Constitution to define, and prohibit as criminal, certain acts or omissions occurring anywhere in the United States, it has no power to punish for various other crimes, jurisdiction over which is retained by States under our Federal-State system of government, <u>unless such crimes occur in areas as to which legislative jurisdiction has been vested in the Federal Government</u>. The absence of jurisdiction in a State, or in the Federal Government, over a criminal act occurring in an area as to which only the other of these governments has legislative jurisdiction is demonstrated by the case of **United States v. Tully**, 140 Fed. 899 (C.C.D.Mont., 1905). **Tully** had been convicted by a State court in Montana of first degree murder, and sentenced to be hanged. The Supreme Court of the State reversed the conviction on the ground that the homicide had occurred on a military reservation over which exclusive jurisdiction was vested in the Federal Government. The defendant was promptly indicted in the Federal court, but went free as the result of a finding that the Federal Government did not, have legislative jurisdiction over the particular land on which the homicide had occurred. The Federal court said (**Id. p.905**):

"It is unfortunate that a murder should go unwhipped of justice, but it would be yet more unfortunate if any court should assume to try one charged with a crime without jurisdiction over the offense. In this case, in the light of the verdict of the jury in the state court, we may assure that justice would be done the defendant were he tried and convicted by any court and executed pursuant to its judgment. But in this court it would be the justice of the vigilance committee wholly without the pale of the law. The fact that the defendant is to be dischrged may furnish a text for the thoughtless or uninformed to say that a murder has been turned loose upon a technicality; but this is not a technicality. It goes to the very right to sit in judgment."***

These sentiments no doubt appealed with equal force to the Supreme Court of Montana, and it is to its credit that it refused to lend its aid to the execution of one for the commission of an act which, in its judgement, was not cognizable under the laws of its state; but I cannot bring myself to the conclusion reached by that able court, and it is upon the judgment and conscience of this court that the matter of jurisdiction here must be decided.

19. Judicial Notice - Rule 201(d)

The United States and each State are in many respects separate sovereigns, and ordinarily one cannot enforce the laws of the other.

State and local police have no authority to enter an exclusive Federal area to make investigations, or arrests, for crimes committed within such areas since Federal, not State offenses are involved. Only Federal law enforcement officials, such as representatives of the Federal Bureau of Investigation and United States marshals and their deputies, would be authorized to investigate such offenses and make arrests in connection with them. The policing of Federal exclusive jurisdiction areas must be accomplished by Federal personnel, and an offer of a municipality to police a portion of a road on such an area could not be accepted by the Federal official in charge of the area, as police protection by a municipality to such an area would be inconsistent with Federal exclusive jurisdiction.

**Concurrent Federal and State criminal jurisdiction.** -- There are, of course, Federal areas as to which a State, in ceding legislative jurisdiction to the United States, has reserved some measure of jurisdiction, including criminal jurisdiction, concurrently to itself. In general, where a crime has been committed in an area over which the United States and State have concurrent criminal jurisdiction, both governments may try the accused without violating the double jeopardy clause of the Fifth Amendment. **Grafton v. United States**, 206 U.S. 333 (1907), held that the same acts constituting a crime cannot, after a defendant's acquittal or conviction in a court of competent jurisdiction of the Federal Government, be made the basis of a second trial of the defendant for a crime in the same or in another court, civil or military, of the same government. However, where the same act is a crime under both State and Federal Law, the defendant may be punished under each of them. **Herbert v. Louisiana**, 272 U.S. 377 (1922).(p.382):

20. Judicial Notice - Rule 201(d)

"It follows that an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each. The Fifth amendment, like all the other guaranties in the first eight amendments, applies only to proceedings by the Federal Government, **Barron v. Baltimore**, 7 Pet. 243, and the double jeopardy therein forbidden is a second prosecution under authority of the Federal Government after a first trial for the same offense under the same authority..."

It is well settled, of course, that were two tribunals have concurrent jurisdiction that which first takes cognizance of a matter has the right, in general, to retain it to a conclusion, to the exclusion of the other. The rule seems well state din **Mail v. Maxwell**, 107 Ill, 554 (1883),(p.561):

"Where one court has acquired jurisdiction, no other court, State or Federal, will, in the absence of supervising or appellate jurisdiction, interfere, unless in pursuance of some statute, State or Federal, providing for such interference."

Other courts have held similarly. There appears to be some doubt concerning the status of a court-martial as a court, within the meaning of the Judicial Code, however, Law enforcement on areas of exclusive or concurrent jurisdiction. -- The General Services Administration is authorized by statute to appoint its uniformed guards as special policemen, with the same powers as sheriff's and constables to enforce Federal laws enacted for the protection of persons and property, and to prevent breaches of the peace, to supress affrays or unlawful assemblies, and to enforce rules made by General Services Administration for properties under its jurisdiction; but the policing powers of such special policemen are restricted to Federal property over which the United States has acquired exclusive or concurrent jurisdiction. Upon the application of the head of any Federal department or agency having property of the United States under its administration or control and over which the United States has exclusive or concurrent jurisdiction, the General Services Administration is authorized by statute to detail any such special policeman for the protection of such property and, if it is deemed desirable, to extend to such property the applicability of regulations governing property promulgated by the General Services Administration. The General Services Administration is authorized by the same statute to utilize the facilities of

21. Judicial Notice - Rule 201(d)

existing Federal law-enforcement agencies, and, with the consent of any State or local agency, the facilities and services of such State or local law enforcement agencies.

Although the Department of Interior required protection for an installation housing important information secret work, the General Services Administration was without authority to place unformed guards on the premises in the absence in the United States of exclusive or concurrent jurisdiction over the property, and notwithstanding the impropriety of permitting the policing of the property by local officials, if they were willing, without necessary security clearances.

Civilian Federal employees may be assigned to guard duty on Federal installations, but there is no Federal statute (other than that appertaining to General Services Administration and three statutes of even less effect **16 U.S.C. 559 (Forest Service), and 16 U.S.C. 10 and 10a (National Park Service)** conferring any special authority on such guards. They are not peace officers with the usual powers of arrest and have no greater powers of arrest than private citizens. As citizens, they may protect their own lives and property and the safety of others, and as agents of the Government they have a special right to protect the property of the Government. For both these purposes they may use reasonable force, 'and for the latter purpose they may bear arms irrespective of State law against bearing arms. Such guards unless appointed as deputy sheriffs (where the State has at least concurrent criminal jurisdiction), or deputy marshals (where the United States has at least concurrent criminal jurisdiction), have no ore authority than other private individuals so far as making arrest is concerned.

State and local officers may, by Federal special statute, preserve the peace and make arrests for crimes under the laws of States, upon immigrant stations, and

22. Judicial Notice – Rule 201(d)

the jurisdiction of such officers and of State and local courts has been extended to such stations for the purposes of the statute.

**Partial Jurisdiction.** -- In some instances States granting to the Federal Government a measure of exclusive legislative jurisdiction over an area have reserved the right to exercise, only by themselves, or concurrently by themselves as well as by the Federal Government, criminal jurisdiction over the area. In instances of complete State retention of criminal jurisdiction, whether with respect to all matters or with respect to a specified category of matters, the rights of the States, of the United States, and of any defendants, with respect to crimes as to which State jurisdiction is so retained are as indicated in this chapter for areas as to which the Federal Government has no criminal jurisdiction. In instances of concurrent State and Federal criminal jurisdiction with respect to any matters, the rights of all parties are, of course, determined with respect to such matters according to the rules of law, generally applicable in areas of concurrent jurisdiction. Accordingly, there is no body of law specially applicable to criminal activities in areas under the partial legislative jurisdiction of the United States.

**State criminal jurisdiction.** -- State criminal jurisdiction extends into areas owned or occupied by the Federal Government, but as to which the Government has not acquired exclusive legislative jursidiction with respect to crimes. And as to many areas owned by the Federal Government for its various purposes, it has not acquired legislative jurisdiction. The Forest Service of the Department of Agriculture, for example, in accordance with a provision of Federal law (16 U.S.C. 480), has not accepted the jurisdiction proffered by the statutes of many States, and the vast majority of Federal lands are held by the Federal Government in a proprietorial status only.

23. Judicial Notice – Rule 201(d)

The Federal Government may not prosecute for ordinary crimes committed in such areas. Federal civilians who may be appointed as guards in the areas do not have police powers, but possess only the powers of arrest normally had by any citizen unless they receive appointments as State or local police officers.

The foregoing present several questions concerning the purported jurisdiction of the court in the above styled action. Some of which are:

1. Did the federal government ever obtain jurisdiction over the geographical areas described in the governments charging instruments as being the Locus in Quo whereon the purportedly prohibited acts of the undersigned took place?

   a. If so, when?

   b. If so, to what extent?

2. Are the governments charging instruments defective on their face where they fail to establish on their face or at any subsequent juncture therein, that the locus in quo was within the legislative, territorial or admiralty jurisdiction of the federal United States?

   a. **Was the Grand Jury informed that the locus in quo, as described by the government, was not within the legislative, territorial or admiralty jurisdiction of the United States?**

   b. **Did the United States district court commit reversible error where it failed to render a legal determination on the record as to whether or not the Court had jurisdiction to entertain the cause.**

3. Did the federal government establish on the record, that it had Subject Matter jurisdiction over the alleged prohibited act(s), where the government failed to charge the undersigned with an alleged violation of the federal "Interstate Commerce" clause?

   a. **Did the federal government inform the Grand Jury that the sine qua non to the legitimate application of the enumerated subsections of the Controlled Substance Act is Commerce?**

   b. **Did the United States district court error where it failed to notice the missing element in the charged offense, and failed to render a legal determination as to the obvious defect?**

FACTS AND FINDINGS OF LAW
IN THE NATURE OF RULE 201(d)
OF THE FEDERAL RULES
OF EVIDENCE

### FACT AND FINDING:

Fact, a thing done; and action performed or an incident transpiring, an event or circumstance; and actual occurrence.

### (SPECIAL) FINDING:

Is a specific setting forth the ultimate facts established by the evidence and which are determinative of the judgement which must be given. It is only a determination of the ultimate facts on which the law must be determined. A special finding may also be said to be one limited to the fact issue submitted.

### ULTIMATE FACTS:

One that is essential to the right of action or matter of defense, and the trial court is under the duty of submitting only or controlling issues.

1. **Title 42 U.S.C.S. 1986:** "Action for neglect to prevent," Every person who having knowledge that any of the wrongs conspired to be done, and mentioned in Section 42 U.S.C.S. 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or persons legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on case; and any number or persons guilty of such wrongful neglect or refusal may be joined as defendants in action. (42 U.S.C.S. 1986 is derivative of 1985 and provides remedy for persons injured by neglect or refusal of those having power to do so to prevent wrongs specified in 1985)

25. Judicial Notice — Rule 201(d)

2. **Title 28 U.S.C.S. § 453:** Each justice or judge of the United States shall take the following oath affirmation before performing the duties of his office: "I,_____, do solemnly swear (or affirm) that I will administer justice without, respect to persons, and do equal right to the poor and to the rich, and that I will faithfully and impartially discharge and perform all the duties incumbent upon me as _____, under the Constitution and the laws of the United States so help me God." (Note: It does not say "United States of America").

3. **7th Amendment:** In Suits at common law, where the value in controversy shall exceed twenty dollars, the right to trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

4. **Title 18 U.S.C.S. § 1621:** "Perjury"
Whoever:

(1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true;
is guilty of perjury and shall, except as otherwise expressly provided by law, be fined not more than $2,000 or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States. See: 18 U.S.C. §1622, §1623 and §1001.

26. Judicial Notice – Rule 201(d)

5. **"Perjury of Oath of Office"**: Perjury; Inforjudgemental law, the willful assertion as to a matter of fact, opinion, belief or knowledge, made by a witness in a judicial proceeding as part of his or her evidence, either upon oath or in any form allowed by law to be substituted for an oath or in any form allowed by law to be substituted for an oath, whether such evidence is given in open court, or in an affidavit, or otherwise, such assertion being material to the issue or point of inquiry and known to such witness to be false. Perjury is a crime committed when a lawful oath is administered, in some judicial proceeding, to a person who swear willfully, absolutely, and falsely, in matters material to the issue or point in question. (Reference **Gatewood v. State**, 15 MD. App. 314, 290 A.2d 551,553; F.R.C.P. Rule 9(b), 12(d)(1),(2),(7); Title 42 U.S.C. 1986, 1985, 1983 Note 349, 14th Amendment U.S. Constitution).

6. **F.R.C.P. Rule 56(e)**: Form of Affidavits; Further Testimony; Defense Required. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the Affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto and served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, and adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

27. Judicial Notice – Rule 201(d)

7. **Stare Decisis:** Policy of Courts to stand by precedent and not to disturb settled point. **Neff v. George**, 364 Ill. 306, 4 N.E.2d 388, 390,391. Doctrine that, when a court has once laid down a principle of law as applicable to a certain state of facts; regardless of whether parties and property are the same. **Horne v. Moody Tex. Civ.**, App., 146 S.W.2d 505, 509, 510. Under doctrine a deliberate or solemn decision of court made after argument on question of law fairly arising in the case, and necessary to its determination, **is an authority or binding precedent in the same court** or in other courts of equal or lower rank in subsequent cases where the very point is again in controversy. **State v. Mellenberger**, 163 Or. 233, 95 P.2d 709, 719, 720. **Black's Law Dictionary 5th Edition pg.1261** (Further reference: Defendant's knowledge of wrongful acts is statutory prerequisite to suit under 42 U.S.C. 1986). **Buck v. Board of Elections**, 536 F.2d 522 (1976). Prior, unreviewed state administrative adjudication may have no preclusive effect on claims subsequently asserted under 42 U.S.C.S. 1981, 1983, 1985, 1986, 1988. **Elliot v. University of Tennessee**, 766 F.2d 982 (CA6 Tenn, 1985), 38 BNA FEP Cas 522, 37 CCH EPD 25419, cert. gr. 474 U.S. 1004, 88 L.Ed.2d 455, 106 S.Ct. 522 and affd. in part and revd in part on other grounds 478 U.S. 788, 92 L.Ed.2d 635, 106 S.Ct. 3220, 41 BNA FEP Cas 177, 40 CCH EPD 36205.

8. **F.R.C.P. 12(b)(6):** Rule 12 is Defenses and Objections; Rule 12(b) states with particularity, **How presented.** Every defense in law or fact, to a claim for relief in any pleading, whether a claim, counter claim, cross claim, or third party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion. Section 12(b)(6): failure to state a claim upon which relief can be granted.

28. Judicial Notice – Rule 201(d)

9. **F.R.C.P. 12(b)(2):** Rule 12 is Defenses and Objections; Rule 12(b) states with particularity. **How presented.** Every defense in law or fact, to a claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: 12(b)(2): lack of jurisdiction over the person. (Refer F.R.C.P. 12(b)(7): Failure to join a party under Rule 19.)(F.R.C.P. Rule 19(b)).

10. **F.R.C.P. 12(b)(1):** Rule 12 is Defense and Objections; Rule 12(b) states with particularity. **How presented.** Every defense in law or fact, to a claim for relief in any pleading, whether a claim, counter claim, cross claim, or third party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: 12(b)(1): lack of jurisdiction over the subject matter. (Refer Note 7).

11. **F.R.C.P. 12(b)(7):** Rule 12 is Defense and Objections; Rule 12(b) states with partticularity. **How presented.** Every defense in law or fact, to a claim for relief in any pleading, whether a claim, counter claim, cross claim, or third party claim shall be asserted in the responsive pleading thereto if one is required, except that he following defenses may at the option of the pleader be made by motion: 12(b)(7): Failure to join a party under Rule 19(3)).

12. **14 Amendment (Sec. 1):** No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the <u>equal protections of the laws</u>.

29. Judicial Notice - Rule 201(d)

13. **Title 18 U.S.C.A. Section 872:** Extortion by officers or employees of the United States. Whoever, being an officer, or employee of the United States or any department or agency, thereof, or representing himself to be or assuming to act as such, under color or pretense of office or employment commits or attempts an act of extortion, shall be fined under this title or imprisoned not more than three years, or both; but if the amount so extorted or demanded does not exceed $1,000, he shall be fined under this title or imprisoned not more than one year, or both. (As amended Oct. 31, 1951, ch 655, §24(b), 65 Stat. 720; Sept 13, 1994, P.L. 103-322, Title XXXIII, §330016(1)(G),(K), 108 Stat. 2147; Oct. 11, 1996, P.L. 104-294, Title VI, §606(a), 110 Stat. 3511.)

14. **1st. Amendment:** Freedom of speech, press, and to petition for a redress of grievances. **5th. Amendment:** No person shall be deprived of life, liberty, or property without due process of law. **6th. Amendment:** Right to a speedy and public trial, by an impartial jury of the state and district wherein the crimes shall have been committed, and informed of the nature and cause of the accusation. **7th. Amendment:** In suits of common law, where the value in controversy shall exceed twenty dollars, the right to jury by trial shall be preserved, and no fact tried except by jury.

15. **Title 18 U.S.C.A. Section 242:** Provides in pertinent part; "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States...shall be fined not more than $1,000 or imprisoned not more than one year, or both." Question was not whether state law had been violated but whether inhabitant had been deprived of federal right by one who acted under color of any law. **Screws v. United States**, 325 U.S. 91, 89 L.Ed 1495, 65 S.Ct. 1031, 162 ALR 1330, (1945).

30. Judicial Notice - Rule 201(d)

16. **Title 42 U.S.C.A. Section 1985(2): Obstructing justice; intimidating party, witness, or juror.** If two ore more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from "attending such court, or from testifying to any matter pending" therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impending, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

**Discrimination:** A failure to treat all persons equally where no reasonable distinction can be found between those favored and those not favored. Ref. **Baker v. Cal. Land Title Co.**, 349 F.Supp 235, 238, 239 (D.C.Cal. 1972). Title VII of the Civil Rights Bill of 1964.

17. **Title 18 U.S.C.A. Section 241. Conspiracy against rights.** "If two or more persons conspire to injure, oppress, threaten, or intimidate any inhabitant of any State, Territory, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or

"If two ore more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured;"

31. Judicial Notice - Rule 201(d)

They shall be fined not more than $10,000 or imprisoned not more than ten years, or both; and if death results, they shall be subject to imprisonment for any term of years or for life.

18. **Title 42 U.S.C.A. Section 1983. Civil action for deprivation of rights.** Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..

19. **4th Amendment. Unreasonable searches and seizures.** The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and No warrants shall issue, but upon probable cause, supported by "Oath or affirmation," and particularly describing the place to be searched, and the persons or things to be seized.

20. Although city is not "person" amenable to action under 42 U.S.C. 1986, city officials acting in their official capacities are subject to action under this section. **Black Bros. Combined Inc. v. Richmond**, 386 F.Supp 147 (ED Va. 1974), 12 BNA FEP Cas 432, 10 CCH EPD 10267. If city or other municipal corporation had policy or custom of refusing or neglecting to prevent violations of 42 U..S.C.S. 1985, and city's agents, servants, and employees followed that policy or custom, then city could be held liable under 42 U.S.C.S. 1986. **Vasquez v. Reno**, 461 F.Supp 1098 (DC Nev 1978), 21 BNA FEP Cas 1281, 19 CCH EPD 9091. Municipality is directly liable under 42 U.S.C.S. 1985(2),(3), and 1986 only where it is shown that deprivation or rights was pursuant to policy statement, ordinance, regulation, a

32. Judicial Notice - Rule 201(d)

decision of an official adopted and promulgated, or custom usage. **Bell v. Milwaukee**, 536 F.Supp 462 (ED Wis. 1982), affd. in part and revd. in part on other grounds, 746 F.2d 1205 (CA 7 Wis. 1984). (Further reference: 41 ALR.3d 700, Personal liability of policeman, sheriff, or similar peace officer or his bond for injury suffered as a result of failure to enforce law or arrest lawbraker.)

21. **Color of Law:** The appearance or semblance without the substance, of legal right. **State v. Brechler**, 185 Wis. 599, 202 N.W. 144, 148 (Reference Blacks Law Dictionary 4th Edition, pg. 331.

22. **Ratification:** In a broad sense, the confirmation of a previous act done either by the party himself or by another; as, confirmation of a voidable act. **Story** ag. subsection 250, 251; 2 Kent, Comm. 237; **Norton v. Shelby County**, 6 S.Ct. 1121, 118 U.S. 435, 30 L.Ed. 178, **Gallup v. Fox,** 30 A. 756, 64 Conn. 491. In the law of principal and agent, the adoption and confirmation by one person with knowledge of all material fact, of an act or contract performed or entered into, in, his behalf by another who at the time assumed without authority to act as his agent. **Maryland Casualty Co. v. First State Bank of Delaware**, 101 Okl. 71, 223P. 701, 705. (Ref. Blacks Law Dictionary 4th Edition, pg. 1428).

23. **Stipulation:** A material article in agreement. (Ref. Blacks Law Dictionary 4th Edition, pg. 1586).

24. **F.R.C.P. Rule 11: Signing of Pleadings, Motions, and Other Papers; Representations to Court; Sanctions. 11(b):** By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances,- **11(b)(2):** the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous

33. Judicial Notice - Rule 201(d)

argument for the extension, modification, or reversal of existing law or the establishment of new law.

25. **Fiduciary:** A person having a duty, created by an undertaking, to act primarily for another benefit in matters connected with such undertaking. (Ref. Blacks Law Dictionary 5th Edition p.563).

Malice in law is not necessarily personal hate or ill will, but is that state of mind which is reckless of the law and of the legal rights of the citizen. (Ref. **Chrisman v. Terminal R. Ass'n of St. Louis**, 237 Mo. APP. 181, 157 S.W.2d 230, 235.

26. **Fraud:** An intentional perversion of truth, for the purpose of inducing another in reliance upon it in part with some valuable thing belonging to him or to surrender a legal right. A false representation of a matter of fact, whether by words or by conduct, by false or misleading allegation, or by concealment of that which should have been disclosed, which devices and is intended to deceive another so that he shall act upon it to his legal injury. **Brainerd Dispatch Newspaper Co. v. Crow Wing County**, 196 Minn 194, 264 N.W. 779, 780. any kind of artifice employed by one person to deceive another. **Goldstein v. Equitable Life Assur. Soc. of U.S.**, 160 Misc. 364, 289 N.Y.S. 1064, 1067. A generic term, embracing all multifarious means which human ingenuity can devise, and which are resorted to by one individual to get advantage over another by false suggestions or by suppression of truth, and includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated. **Johnson v. McDonald**, 170 Okl. 117, 39 P.2d 150. "Bad Faith" and "Fraud" are synonymous and also synonymous of dishonesty, infidelity, faithlessness, perfidy, unfairness, etc. **Joiner v. Joiner**, Tex. Civ. App., 87 S.W.2d 903, 914, 915. (Ref. Blacks Law Dictionary 4th Edition. 788, 789)

34. Judicial Notice — Rule 201(d)

**Note:**

Because everyone is deemed to know the law, inaccurate representations regarding legal matters are not generally actionable. Of course, were one to make a representation regarding a matter of law that the misrepresenter himself knew to be inaccurate, a "Fraud" action would lie. (Ref. **White v. Mulvania**, 575 S.W.2d 184 (Mo.1978)(party's "superior" knowledge of the law [held to be an exception from general rule that a misrepresentation of law is not actionable.] (see Note 1 Fact and Finding Sheet).

Whereby, the government's cause against the Petitioner is premised upon an unlawful application of Law, viz:

1. Lack of subject matter jurisdiction;

2. Lack of jurisdiction over defendant, a citizen party;

3. No Fourth Amendment Search Warrant;

4. Unlawful indictment;

5. wrongful application of U.S. Codes;

6. Lack of Published regulations in the Federal Register;

7. Failing to give notice under due process and denial of due process;

8. Usurpation of power not delegated or legislated;

9. Unauthorized Prosecution under Admiralty/Maritime Law;

10. And the denial of the effective assistance of counsel.

35. Judicial Notice — Rule 201(d)

## CONCLUSION

In the **Nature of Rule 201(d),** of the Federal Rules of Evidence, the Court is **compelled** to take **Judicial Notice** of the foregoing, where it is shown that the legislative jurisdiction of the Federal Government is strictly limited and defined. The Federal Government has no Constitutional or Congressional authority to restrict or compel the activities of private citizens, domiciled without the legislative, territorial or admiralty jurisdiction of the federal United States. The jurisdiction of the Court is limited by and does not exceed that of the Federal Government. Where the instant matter is concerned, neither the federal government or the district court have established, on the record, documented proof that the alleged prohibitive conduct of the undersigned was committed within the jurisdiction of the federal United States or that such alleged prohibitive conduct violated a provision of the Federal Interstate Commerce Clause.

**WHEREFORE,** the undersigned respectfully prays that the Court will take **Judicial Notice** of the foregoing and find as a matter of Law and Fact that the federal government lacked both, legislative and subject matter jurisdiction.


Dated this _19_ day of _Nov_ , 2007.          Respectfully Submitted

                                          _Oscar Fuentes_
                                          Oscar Noel Fuentes - Petitoner, Pro-se.

                                          Executed Pursuant to 28 USCS § 1744(1)


Cert mail No. 7006 2760 000 6182 4043


36. Judicial Notice — Rule 201(d)

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF

COLUMBIA

**FILED**

NOV 2 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | | |
|---|---|---|
| OSCAR NOEL FUENTES | * | Case No. _____ 07 2158 |
| Petitioner, | * | RE: Case No. ▪▪▪▪▪▪▪ |
| | * | |
| vs. | * | |
| | * | |
| ATTORNEY GENERAL FOR THE | * | ADMINISTRATIVE |
| "UNITED STATES", | * | |
| and | * | AND |
| HARLEY G. LAPPIN, Dir., | * | QUASI–JUDICIAL |
| FEDERAL BUREAU OF PRISONS, | * | |
| Respondent(s). | * | NOTICE |
| | * | |

BEFORE THIS HONORABLE COURT:

COMES NOW, Oscar Noel Fuentes, the Petitioner, and submits this Administrative and Judicial Notice, to appraise the court of the following, by and through said notice:

1.

Subsection 2255, of **Title 28, of the United States Code**, is inapplicable and without force or effect of law where it is shown not to have been enacted by Congress, into Federal Law. The Congressional Record, Vol. 94–Part 7 (June 15, 1948 to June 19, 1948) pp. 8229–9169, and Vol. 94–Part 8 (July 26, 1948 to December 31, 1948) pp. 9353, to reveal that Congress was not assembled in session on the date(s) that Title 3, 8, 18, 21, and 48 are purported to have been enacted into law by Congress.

2.

The United States District Court, wherein the cause herein complained of arose, is shown to be an Executive Tribunal without Article III judicial authority. This assertion is supported by consulting Supreme Court Rule 45, The Revised Statutes of 1878, The Judiciary Act of March 3, 1911, Executive Order 6166, **Balzac v. Porto Rico**, (1922), **Mookine v. United States**, (1938). Thus, not authorized to entertain the cause now before the court.

3.

Thus, the Court, in similar matters (Common Law Writ of Habeas Corpus), appears to be resorting to inapplicable statutory provisions to remove the cause to a court which the court knows lacks the authority under Article III to entertain the matter. Thereby the sustainment of the unlawful convictions and term of imprisonment **via** subterfuge and non-compliance with the law (a Malum In Se Crime?) whereby the Accused/Petitioner is deprived of due process of law and continues to be obstructed to a remedy in law to redress a grievance.

4.

It is for the foregoing, and following reasons that the Petitioner has brought this instant cause under the common law, Writ of Habeas Corpus, and invoked the venue and jurisdiction of an Article III, Constitutional Court.

5.

It is therefore incumbent upon this Court, in the interest of justice, by and through this Judicial Notice, as a neutral party between both Petitioner and Respondent(s), upon it's own motion to issue an **ORDER TO SHOW CAUSE** to the Respondent(s) why the **Writ of Habeas Corpus** should not issue, in their 'showing' based upon the facts and points raised in the Memorandum in support of the Writ of Habeas Corpus.

Dated this _19_ day of _NoV_ , 2007.

Respectfully Submitted
by;

_Oscar Fuentes_
Oscar Noel Fuentes, - Pro-se.

Cert mail No. 7006 2760 0000 6182 4043

# EXHIBIT

# A



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

OCT - 3 2006

CLERK, U.S. DIST. COURT
By _____ KC

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| vs. | § | |
| | § | |
| ANGEL DELEON (1) | § | NO. 3:06-CR-249-G |
| ALFONSO MONTEMAYOR (2) | § | **(Supersedes Indictment filed** |
| GERARDO SOTO  (3) | § | **August 9, 2006)** |
| OSCAR NOEL FUENTES (4) | § | |

SUPERSEDING INDICTMENT

The Grand Jury Charges:

Count 1
Conspiracy to Distribute a Controlled Substance
(Violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A))

Commencing on a date uncertain but no later than July 1, 2006 and continuing to

on or about the date of this indictment, in the Dallas Division of the Northern District of

Texas and elsewhere, **Angel Deleon, Alfonso Montemayor, Gerardo Soto, Oscar Noel**

**Fuentes** and **Octavio Pascual Monreal,** defendants, and others known and unknown to

the grand jury, did intentionally and knowingly combine, conspire, confederate, and agree

with persons known and unknown to the Grand Jury, to possess with intent to distribute

and to distribute five kilograms or more of a mixture and substance containing a

detectable amount of cocaine, a Schedule II controlled substance, in violation of 21

U.S.C. § 841(a)(1).

Indictment - Page 1

07 2158

**FILED**

NOV 2 9 2007

**NANCY MAYER WHITTINGTON, CLERK**
**U.S. DISTRICT COURT**

10-3-06

All in violation of 21 U.S.C. §§ 846, the penalty for which is found in

841(b)(1)(A).

10-3-06

<u>Count 2</u>
Possession with Intent to Distribute a Controlled Substance; Aiding and Abetting
(Violations of 21 U.S.C. §§ 841(a)(1) and 18 U.S.C. § 2)

On or about July 18, 2006, in the Dallas Division of the Northern District of Texas,

**Angel Deleon, Alfonso Montemayor** and **Gerardo Soto**, defendants, aided and abetted

by each other and others known and unknown to the Grand Jury, did knowingly possess

with the intent to distribute 500 grams or more of a mixture and substance containing a

detectable amount of cocaine, a Schedule II controlled substance.

In violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, the penalty for which is

found in 21 U.S.C. § 841 (b)(1)(B).

10-3-06

<u>Count 3</u>
Carrying a Firearm During and in Relation to, and Possessing a Firearm in the
Furtherance of, a Drug Trafficking Crime; Aiding and Abetting
(Violation of 18 U.S.C. §§ 924(c)(1)(A) and 2)


On or about July 18, 2006, in the Dallas Division of the Northern District of Texas,

**Angel Deleon, Alfonso Montemayor** and **Gerardo Soto**, defendants, aided and abetted

by each other and others known and unknown to the Grand Jury, did knowingly carry a

firearm, namely, a Keltec 9MM, during and in relation to a drug trafficking crime, for

which the defendants may be prosecuted in a court of the United States, namely,

possession with intent to distribute 500 grams or more of a mixture and substance

containing a detectable amount of cocaine, a Schedule II controlled substance, as alleged

in Count Two of this indictment, in violation of 21 U.S.C. § 841(a)(1), and the defendants

knowingly possessed said firearm in furtherance of the commission of this offense.

In violation of 18 U.S.C. § 924(c)(1)(A) and 2.

10-3-06

<u>Count 4</u>
Possession with Intent to Distribute a Controlled Substance; Aiding and Abetting
(Violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2)

On or about July 18, 2006, in the Dallas Division of the Northern District of Texas,

**Oscar Noel Fuentes** and **Octavio Pascual Monreal,** defendants, aided and abetted by

each other and others known and unknown to the Grand Jury, did knowingly possess with

intent to distribute five kilograms or more of a mixture and substance containing a

detectable amount of cocaine, a Schedule II controlled substance.

In violation of 21 U.S.C. §§ 841(a)(1) and 18 U.S.C. § 2, the penalty for which is

found at 21 U.S.C. § 841(b)(1)(A).

10-3-06

<u>Count 5</u>
Possession of a Firearm in Furtherance of a Drug Trafficking Crime; Aiding and Abetting
(Violation of 18 U.S.C. § 924(c)(1)(A) and 18 U.S.C. § 2)


On or about July 18, 2006, in the Dallas Division of the Northern District of Texas,

**Oscar Noel Fuentes** and **Octavio Pascual Monreal**, defendants, aided and abetted by

each other and others known and unknown to the Grand Jury, did knowingly possess a

firearm, namely, a Mossberg 12-gauge shotgun and a Ruger 9mm handgun, serial number

31561706, in furtherance of a drug trafficking crime, for which the defendants may be

prosecuted in a court of the United States, namely, possession with intent to distribute

five kilograms or more of a mixture and substance containing a detectable amount of

cocaine, a Schedule II controlled substance, as alleged in Count Four of this indictment,

in violation of 21 U.S.C. § 841(a)(1).

In violation of 18 U.S.C. §§ 924(c)(1)(A) and 2.

10-3-06

<u>Count 6</u>
Possession of a Firearm in Furtherance of a Drug Trafficking Crime
(Violation of 18 U.S.C. § 924(c)(1)(A))

On or about July 18, 2006, in the Dallas Division of the Northern District of Texas,

**Angel Deleon, Oscar Noel Fuentes** and **Octavio Pascual Monreal**, defendants, aided

and abetted by each other and others known and unknown to the Grand Jury, did

knowingly possess a firearm, namely, a Romarm assault rifle, a ITM Arms rifle and a

Ruger 9mm handgun, serial number 30326078, in furtherance of a drug trafficking crime,

for which the defendants may be prosecuted in a court of the United States, namely,

conspiracy to possess with intent to distribute and to distribute five kilograms or more of

a mixture and substance containing a detectable amount of cocaine, a Schedule II

controlled substance, as alleged in Count One of this indictment, in violation of 21 U.S.C.

§ 846.

In violation of 18 U.S.C. § 924(c)(1)(A).

*10-3-06*

## Count 7
Forfeiture Allegation
(21 U.S.C.§ 853(a); 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c))

Upon conviction of any of the offenses alleged in Counts 1, 2, and 4 of this

Indictment, the defendants, **Angel Deleon, Alfonso Montemayor, Gerardo Soto and**

**Oscar Fuentes,** shall forfeit to the United States of America all property, real or personal,

constituting, or derived from, the proceeds obtained, directly or indirectly, as a result of

the respective offense; and any property, real or personal, used or intended to be used, in

any manner or part, to commit or to facilitate the commission of the respective offense.

Upon conviction of any of the offenses alleged in Counts 3, 5, and 6 of this

Indictment, the defendants, **Angel Deleon, Alfonso Montemayor, Gerardo Soto and**

**Oscar Noel Fuentes** shall forfeit to the United States of America all firearms and

ammunition involved in the commission of the respective offense.

The above-referenced property subject to forfeiture concerning the previously-

mentioned defendants includes, but is not limited to, the following:

1.   Keltec pistol, model P-11, 9 mm caliber, serial number 43039
2.   Ruger pistol, model P89DC, 9 mm caliber, serial number 315-61706
3.   Ruger pistol, model P89DC, 9 mm caliber, serial number 303-26078
4.   Mossberg shotgun, model 500, 12 gauge, serial number P593418
5.   Romarm rifle, model unknown, 7.62 x 39 mm caliber, serial number AG060681
6.   ITM Arms rifle, model MK-99, 7.62 x 39 mm caliber, serial number 0010643
7.   10 – live CBC 9 mm Luger caliber rounds of ammunition
8.   15 – live Sellier & Bellot 00 Buck 12 gauge shotgun rounds of ammunition
9.   45 – live CBC 9 mm Luger caliber rounds of ammunition
10.  14 – live *I* 9 mm Luger caliber rounds of ammunition
11.  99 – live unknown manufacturer 7.62 x 39 mm caliber rounds of ammunition
12.  $26,343.00 in U.S. currency seized on July 18, 2006

Indictment - Page 8

10-3-06

A TRUE BILL

# REDACTED

FOREPERSON

RICHARD ROPER
UNITED STATES ATTORNEY

JOHN KULL
Assistant United States Attorney
State Bar of Texas 00791057
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: 214.659.8738
Fax: 214.659.8803
John.Kull@usdoj.gov

Indictment - Page 9

10-3-06

# EXHIBIT
# B

CODE OF LAWS                                    **1 USCS § 204**

bia. Act Dec. 27, 1967, P. L. 90-226, Title X, §§ 1001-1009, 81 Stat. 724, which provided for the creation and operation of a commission to study and make recommendations with reference to a revised code of criminal law and procedure for the District of Columbia, was repealed by Act July 29, 1970, P. L. 91-358, Title VI, § 601, 84 Stat. 667; Dec. 7, 1970, P. L. 91-530, § 2(b)(1), 84 Stat. 1390.

### CROSS REFERENCES

Council of the District of Columbia, 2 USCS § 285b.

Office of the Law Revision Counsel, 2 USCS § 285b.

This section is referred to in 1 USCS §§ 201, 205, 208, 209, 210, 211, 213.

## § 204. Codes and Supplements as evidence of the Laws of United States and District of Columbia; citation of Codes and Supplements

In all courts, tribunals, and public offices of the United States, at home or abroad, of the District of Columbia, and of each State, Territory, or insular possession of the United States—

**(a) United States Code.** The matter set forth in the edition of the Code of Laws of the United States current at any time shall, together with the then current supplement, if any, establish prima facie the laws of the United States, general and permanent in their nature, in force on the day preceding the commencement of the session following the last session the legislation of which is included: Provided, however, That whenever titles of such Code shall have been enacted into positive law the text thereof shall be legal evidence of the laws therein contained, in all the courts of the United States, the several States, and the Territories and insular possessions of the United States.

**(b) District of Columbia Code.** The matter set forth in the edition of the Code of the District of Columbia current at any time shall, together with the then current supplement, if any, establish prima facie the laws, general and permanent in their nature, relating to or in force in the District of Columbia on the day preceding the commencement of the session following the last session the legislation of which is included, except such laws as are of application in the District of Columbia by reason of being laws of the United States general and permanent in their nature.

**(c) District of Columbia Code; citation.** The Code of the District of Columbia may be cited as "D. C. Code."

**(d) Supplements to Codes; citation.** Supplements to the Code of Laws of the United States and to the Code of the District of Columbia may be cited, respectively, as "U. S. C., Sup. ," and "D. C. Code, Sup. ," the blank in each case being filled with Roman figures denoting the number of the supplement.

**(e) New edition of Codes; citation.** New editions of each of such codes may be cited, respectively, as "U. S. C., ed.," and "D. C. Code, ed.," the blank in each case being filled with figures denoting the last year the legislation of which is included in whole or in part.

(July 30, 1947, ch 388, § 1, 61 Stat. 638.)

07 2158

**FILED**

NOV 2 9 2007

**NANCY MAYER WHITTINGTON, CLERK**
**U.S. DISTRICT COURT**

# PARALLEL TABLE OF AUTHORITIES AND RULES

The following table lists rulemaking authority (except 5 U.S.C. 301) for regulations codified in the *Code of Federal Regulations*. Also included are statutory citations which are noted as being interpreted or applied by those regulations.

The table is divided into four segments: United States Code citations, United States Statutes at Large citations, public law citations, and Presidential document citations. Within each segment the citations are arranged in numerical order:

For the United States Code, by title and section;

For the United States Statutes at Large, by volume and page number;

For public laws, by number; and

For Presidential documents (Proclamations, Executive orders, and Reorganization plans), by document number.

Entries in the table are taken directly from the rulemaking authority citation provided by Federal agencies in their regulations. Federal agencies are responsible for keeping these citations current and accurate. Because Federal agencies sometimes present these citations in an inconsistent manner, the table cannot be considered all-inclusive.

The portion of the table listing the United States Code citations is the most comprehensive, as these citations are entered into the table whenever they are given in the authority citations provided by the agencies. United States Statutes at Large and public law citations are carried in the table only when there are no corresponding United States Code citations given.

This table is revised as of January 1, 2003.

# CFR Index

| 16 U.S.C.—Continued | CFR |
|---|---|
| 704 | 50 Parts 12—14 |
| 706—707 | 50 Part 12 |
| 712 | 50 Parts 12, 13, 14, 21 |
| 715i | 43 Part 5 |
| | 50 Parts 25, 27—32 |
| 715s | 43 Part 17 |
| | 50 Parts 27, 34, 37 |
| 718 | 50 Part 31 |
| 718f—718g | 50 Part 12 |
| 718j | 50 Part 91 |
| 725 | 43 Part 21 |
| | 50 Parts 27—31 |
| 742 et seq | 50 Part 36 |
| 742 | 50 Parts 38, 251 |
| 742a et seq | 50 Part 222 |
| 742a—742j—1 | 50 Parts 10, 19 |
| 742a—742j | 50 Part 20 |
| 742e | 50 Part 260 |
| 742j—1 | 50 Parts 12, 13 |
| 742l | 50 Part 12 |
| 745 | 17 Part 274 |
| 753a | 43 Part 17 |
| 757a—757f | 43 Part 17 |
| | 50 Part 401 |
| 760c | 33 Part 209 |
| 760d | 43 Part 17 |
| 760g | 33 Part 209 |
| 773 et seq | 50 Parts 300, 679 |
| 773—773k | 15 Part 904 |
| 777 | 43 Part 17 |
| 777g | 50 Parts 85, 86 |
| 777g-1 | 50 Part 86 |
| 777i | 50 Part 80 |
| 779e | 29 Parts 1, 5 |
| 781 et seq | 15 Part 904 |
| 791 et seq | 10 Part 205 |
| 791—828c | 18 Part 381 |
| 791—825r | 18 Parts 37, 375, 385, 390 |
| 791—823 | 33 Part 221 |
| 791 | 33 Parts 208, 222 |
| 791a—828c | 18 Parts 3, 141, 154, 290 |
| 791a—825r | 18 Parts 2, 4, 8, 11, 16, 24, 32—36, 41, 45, 101, 131, 292, 294, 382, 385, 390 |
| 792 et seq | 10 Part 205 |
| | 18 Parts 1b, 154 |
| 792—828c | 18 Parts 12, 46, 225, 260, 294 |
| 792—825y | 18 Part 2 |
| 796 | 18 Part 20 |
| 797 | 33 Part 209 |
| 799 | 18 Part 6 |
| 801 | 18 Part 9 |
| 803 | 18 Part 6 |
| 806 | 18 Part 6 |
| 812—813 | 18 Part 20 |
| 818 | 18 Part 25 |
| | 43 Part 2300 |
| 825 | 18 Parts 3c, 125 |
| 825c | 18 Part 125 |
| 825c | 18 Part 41 |
| 825g—825h | 18 Parts 6, 25 |
| 825h | 18 Parts 3a, 3b, 9, 125, 154 |
| 825k | 18 Part 20 |
| 825k | 7 Part 15 |
| 825s | 10 Part 903 |
| | 18 Part 300 |

| 16 U.S.C.—Continued | CFR |
|---|---|
| 831—831dd | 5 Part 7901 |
| | 18 Parts 1300—1311, 1313—1314 |
| 831—831ee | 18 Part 1315 |
| 832—832l | 18 Part 300 |
| 835c note | 43 Part 17 |
| 835c—1 | 43 Part 413 |
| 835c—4 | 18 Part 300 |
| 838—838k | 18 Parts 300, 301 |
| 839—839h | 18 Part 14 |
| 852 | 50 Part 12 |
| 852d—853 | 50 Part 230 |
| 916 et seq | 15 Part 904 |
| 916—916l | 50 Part 230 |
| 916a—1 | 43 Part 17 |
| 921 | 15 Part 904 |
| 951—961 | 50 Part 300 |
| 971 et seq | 50 Parts 285, 300, 630 |
| 971—971l | 15 Part 904 |
| 972—972h | 15 Part 904 |
| 973—973r | 50 Part 300 |
| 1001 et seq | 7 Part 622 |
| 1001—1008 | 7 Parts 15, 601, 650, 654 |
| 1005...7 | Parts 1775, 1777, 1778—1780, 1781, 1930, 1942 |
| 1006 | 7 Part 621 |
| 1009 | 7 Part 621 |
| 1021—1032 | 15 Part 904 |
| 1131 et seq | 36 Part 9 |
| | 43 Part 6300 |
| 1131—1136 | 36 Part 293 |
| | 43 Parts 19, 3800 |
| | 50 Part 35 |
| 1131 | 36 Part 294 |
| 1133 | 36 Part 261 |
| 1134 | 36 Part 251 |
| 1151—1175 | 15 Part 904 |
| 1191—1204 | 16 Part 1610 |
| 1201—1205 | 43 Part 17 |
| 1241 et seq | 43 Parts 8340, 8360, 8370 |
| 1241—1249 | 43 Parts 8370, 9260 |
| 1241 | 43 Part 8350 |
| 1246 | 36 Part 261 |
| | 43 Part 9260 |
| 1247 | 49 Part 1152 |
| 1248 | 49 Part 1152 |
| 1271—1287 | 43 Parts 3800, 8370 |
| 1271 | 43 Part 8350 |
| 1278 | 36 Part 297 |
| 1280 | 43 Part 3809 |
| 1281 | 36 Parts 292, 297 |
| | 43 Part 8350 |
| 1281c | 43 Parts 8340, 8360 |
| 1301—1311 | 7 Part 752 |
| 1317 | 50 Part 216 |
| 1331—1340 | 36 Part 261 |
| | 43 Part 4700 |
| 1338 | 43 Part 9260 |
| 1361 et seq | 50 Parts 18, 216, 222—224, 228, 229, 230, 403 |
| 1361—1407 | 15 Part 904 |
| | 50 Parts 17, 82, 216 |
| 1361—1384 | 50 Part 10 |
| 1361 | 36 Part 13 |
| 1371 | 50 Part 17 |
| 1372 | 50 Part 17 |

## Authorities

| 16 U.S.C.—Continued | CFR |
|---|---|
| 1374 | 50 Part 17 |
| 1375 | 50 Part 17 |
| 1375 et seq | 50 Part 10 |
| 1375—1377 | 50 Part 12 |
| 1382 | 50 Parts 11—14, 17 |
| 1401—1407 | 50 Part 10 |
| 1431 et seq | 15 Part 922 |
| 1431—1439 | 15 Part 904 |
| 1431—1434 | 15 Part 929 |
| 1435—1439 | 15 Part 904 |
| 1451 et seq | 15 Parts 923, 930 |
| 1451 | 49 Part 1105 |
| 1456 | 33 Part 209 |
| | 49 Part 365 |
| 1461 | 15 Part 921 |
| 1501—1510 | 7 Part 701 |
| 1531 et seq | 7 Part 650 |
| | 30 Part 773 |
| | 32 Part 190 |
| | 43 Part 8340 |
| | 50 Parts 23, 222, 223, 230, 402, 424, 450—453 |
| 1531—1544 | 50 Parts 17, 22 |
| 1531—1543 | 15 Part 904 |
| | 32 Part 552 |
| | 50 Parts 10, 23, 81, 223, 224 |
| 1531 | 36 Part 13 |
| | 49 Part 1105 |
| 1532 | 7 Part 355 |
| 1533 | 50 Parts 17, 226 |
| 1538—1540 | 50 Part 13 |
| 1538 | 7 Part 355 |
| | 50 Parts 14, 17, 24 |
| 1540 | 7 Parts 1, 355, 356, 380 |
| | 50 Parts 11, 12, 14, 17, 24 |
| 1561 et seq | 50 Part 227 |
| 1603 | 36 Part 200 |
| 1604 | 36 Part 219 |
| 1606 | 7 Part 701 |
| 1608—1610 | 23 Part 660 |
| 1608 | 36 Part 294 |
| 1612 | 36 Part 216 |
| 1612 note | 36 Part 215 |
| 1613 | 36 Parts 219, 294 |
| 1704 | 43 Part 26 |
| 1801 et seq | 50 Parts 268, 300, 600, 622, 630, 640, 644, 648, 654, 660, 674, 678, 679 |
| 1801—1882 | 15 Part 904 |
| 1851 note | 15 Part 904 |
| | 50 Part 697 |
| 1853 | 15 Part 905 |
| | 50 Part 605 |
| 1861a | 50 Part 600 |
| 1901 et seq | 36 Part 9 |
| 1901—1912 | 43 Part 3830 |
| 1901 | 43 Parts 3800, 3830 |
| 1907 | 43 Part 3830 |
| 1908 | 36 Part 62 |
| 2001—2645 | 18 Part 290 |
| 2001—2009 | 7 Part 601 |
| 2005b | 7 Part 610 |
| 2101 et seq | 36 Part 200 |
| 2101—2111 | 7 Part 701 |
| 2103b | 36 Part 230 |
| 2105 | 36 Part 230 |
| 2114 | 36 Part 230 |

| 16 U.S.C.—Continued | CFR |
|---|---|
| 2201—2205 | 7 Part 701 |
| 2203—2205 | 7 Part 601 |
| 2203 | 7 Part 624 |
| 2203 | 16 Part 455 |
| 2309 | 45 Parts 672—673 |
| 2401 et seq | 45 Parts 672—673 |
| | 40 Part 8 |
| 2401—2412 | 15 Part 904 |
| | 45 Part 670 |
| 2401 | 45 Part 670 |
| | 40 Part 8 |
| 2403a | 45 Part 671 |
| 2405 | 50 Part 300 |
| 2431 et seq | 15 Part 904 |
| 2431—2444 | 36 Part 72 |
| 2501—2514 | 36 Part 72 |
| 2601—2645 | 18 Parts 2—4, 32—35, 37, 41, 45, 46, 101, 131, 141, 154, 281, 286, 290, 292, 375, 381, 382, 385, 390 |
| 2901 | 50 Part 83 |
| 3101 et seq | 36 Parts 9, 13 |
| | 43 Parts 36, 3000, 3110, 3120 |
| | 50 Part 36 |
| 3101—3126 | 36 Part 242 |
| | 50 Part 100 |
| 3124 | 43 Part 2090 |
| 3142 | 50 Part 37 |
| 3150 | 43 Parts 3100, 3150 |
| 3170 | 36 Part 251 |
| 3197 | 36 Part 13 |
| 3210 | 36 Part 251 |
| 3371 et seq | 50 Parts 10—12, 14 |
| 3371—3378 | 15 Part 904 |
| | 50 Parts 10, 14, 300 |
| 3372 | 25 Part 244 |
| 3373 | 7 Parts 1, 380 |
| 3374 | 7 Part 356 |
| | 50 Part 13 |
| 3601—3608 | 15 Part 904 |
| 3631 et seq | 50 Part 679 |
| 3631—3644 | 15 Part 904 |
| 3636 | 50 Part 300 |
| 3801 et seq | 7 Parts 12, 601 |
| 3837 et seq | 7 Part 1467 |
| 3837—3837f | 7 Part 623 |
| 3839aa—3839aa-8 | 7 Part 1468 |
| 3839bb | 7 Part 636 |
| 3839bb-1 | 7 Part 12 |
| 3841—3844 | 7 Part 652 |
| 3842 | 7 Part 614 |
| 3843 | 7 Part 610 |
| 3861 | 7 Part 610 |
| 3862 | 7 Part 610 |
| 3901 et seq | 50 Parts 25, 38 |
| 3951—3956 | 50 Part 84 |
| 4101 et seq | 50 Part 253 |
| 4201—4245 | 50 Part 17 |
| 4223—4244 | 50 Part 14 |
| 4301—4309 | 36 Part 290 |
| | 43 Part 37 |
| 4601-6a | 36 Part 291 |
| 4901—4916 | 50 Parts 13—15 |
| 5101 et seq | 50 Part 697 |
| 5501 et seq | 50 Part 300 |

| 17 U.S.C. | CFR |
|---|---|
| 101 | 19 Part 133 |
| 111 | 37 Parts 801, 803 |
| 112 | 37 Part 261 |

| 17 U.S.C.—Continued | CFR |
|---|---|
| 114 | 37 Parts 260, 261 |
| 116 | 37 Part 254 |
| 118 | 37 Part 253 |
| 119 | 37 Parts 257, 258 |
| 408 | 37 Part 202 |
| 411 | 37 Part 205 |
| 509 | 28 Part 9 |
| 601—603 | 19 Part 133 |
| 702 | 37 Parts 201—205, 211, 256, 310 |
| 801—803 | 37 Part 251 |
| 801 | 37 Parts 252—255, 260, 261, 304 |
| 802 | 37 Parts 256, 310 |
| 803 | 37 Parts 252, 253, 255 |
| 804 | 37 Part 306 |
| 908 | 37 Part 211 |
| 1007 | 37 Part 259 |

| 18 U.S.C. | |
|---|---|
| 13 | 32 Parts 210, 263, 1290 |
|  | 39 Part 232 |
| 42—44 | 50 Part 11 |
| 42 | 50 Parts 10, 13, 14, 16 |
| 47 | 43 Part 4700 |
| 109 | 21 Part 41 |
| 201—212 | 24 Part 0 |
| 201—212 | 12 Part 511 |
| 201—209 | 29 Part 2202 |
| 201 note | 20 Part 360 |
| 202 | 14 Part 300 |
| 203 | 31 Part 8 |
| 205 | 14 Part 300 |
|  | 31 Part 8 |
| 207 | 5 Parts 1304, 2641 |
|  | 7 Part 1 |
|  | 11 Part 7 |
|  | 12 Parts 400, 933, 2434, 2637 |
|  | 14 Parts 300, 1207 |
|  | 15 Part 0 |
|  | 16 Part 1030 |
|  | 17 Part 207 |
|  | 19 Part 200 |
|  | 22 Parts 18, 223, 525, 710, 713 |
|  | 28 Part 45 |
|  | 29 Part 0 |
|  | 31 Part 15 |
|  | 36 Part 905 |
|  | 39 Part 956 |
|  | 41 Part 105—735 |
|  | 45 Parts 73b, 500 |
|  | 46 Parts 500, 502 |
|  | 49 Part 98 |
| 208 | 5 Part 2640 |
|  | 10 Part 1010 |
|  | 14 Part 1207 |
|  | 15 Part 0 |
|  | 16 Part 5 |
|  | 18 Part 1301 |
|  | 29 Parts 0 |
|  | 34 Part 73 |
|  | 45 Part 680 |
|  | 46 Part 500 |
| 212 | 5 Part 3101 |
| 213 | 5 Part 3101 |
| 219 | 32 Part 516 |
| 223 | 28 Part 524 |
| 241 note | 24 Part 573 |
| 437 | 25 Part 140 |

| 18 U.S.C.—Continued | CFR |
|---|---|
| 474 | 31 Parts 402, 405 |
| 474A | 31 Part 601 |
| 492 | 31 Parts 101, 402, 403 |
| 506 | 36 Part 1200 |
| 512 | 28 Part 9 |
| 545 | 19 Parts 145, 161 |
| 546 | 19 Part 162 |
| 550 | 19 Part 191 |
| 641 | 12 Part 4 |
|  | 22 Part 713 |
|  | 43 Part 8200 |
|  | 49 Part 801 |
| 701 | 20 Part 369 |
|  | 32 Part 507 |
|  | 50 Part 80 |
| 702 | 32 Part 507 |
| 707 | 7 Part 8 |
| 711 | 36 Part 271 |
| 751—752 | 28 Part 511 |
| 751 | 28 Part 570 |
| 798 | 32 Parts 322, 518 |
| 799 | 14 Parts 1203a, 1214 |
| 834 | 49 Part 178 |
| 847 | 27 Parts 55, 178 |
| 921—928 | 27 Part 178 |
| 921 | 27 Part 72 |
| 926 | 27 Part 71 |
| 951 | 28 Part 73 |
| 981 | 28 Part 9 |
|  | 39 Part 233 |
| 982 | 28 Part 9 |
| 983 | 19 Part 171 |
| 1001 | 7 Part 1443 |
|  | 25 Part 151 |
|  | 32 Part 525 |
| 1017 | 36 Parts 701, 1200 |
| 1114 | 28 Part 64 |
| 1116 | 22 Part 2 |
| 1159 | 25 Part 309 |
| 1261 | 27 Part 72 |
| 1301 et seq | 37 Part 212 |
| 1382 | 32 Parts 527, 552, 770 |
| 1467 | 28 Part 9 |
| 1512 | 28 Part 551 |
| 1621 | 22 Part 51 |
|  | 49 Part 1104 |
| 1693—1699 | 39 Parts 310, 320 |
| 1752 | 31 Part 408 |
| 1791—1792 | 28 Part 511 |
| 1791 | 28 Parts 6, 540 |
| 1793 | 28 Part 511 |
| 1851—1861 | 43 Part 9260 |
| 1851—1858 | 43 Part 9230 |
| 1905—1906 | 12 Part 4 |
| 1905 | 19 Part 103 |
|  | 20 Part 402 |
|  | 21 Parts 20, 26 |
|  | 25 Part 516 |
|  | 45 Part 5 |
| 1955 | 28 Part 9 |
| 1956—1957 | 39 Part 233 |
| 1963 | 28 Part 9 |
| 2071 | 49 Part 801 |
| 2152 | 32 Part 761 |
| 2253 | 28 Part 9 |
| 2254 | 28 Part 9 |

| 18 U.S.C.—Continued | CFR |
|---|---|
| | 39 Part 233 |
| 2257 | 28 Part 75 |
| 2332d | 31 Parts 500, 515, 535, 538, 550, 560, 575, 596 |
| 2339B | 31 Parts 538, 550, 560 |
| 2341—2346 | 27 Part 296 |
| 2342 | 27 Part 275 |
| 2386 | 28 Part 10 |
| 2510 et seq | 15 Parts 730, 738, 742, 774 |
| 2513 | 28 Part 9 |
| 3001 note | 28 Part 42 |
| 3013 | 28 Part 545 |
| 3050 | 28 Part 511 |
| 3056 | 31 Parts 409, 413 |
| 3059 | 28 Part 7 |
| 3061 | 39 Parts 232, 233 |
| 3181 et seq | 22 Part 171 |
| 3401—3402 | 32 Part 1290 |
| 3401 | 28 Part 52 |
| | 32 Part 516 |
| 3496 | 22 Part 92 |
| 3500 | 32 Part 518 |
| 3521—3528 | 28 Part 524 |
| 3551 et seq | 43 Part 9260 |
| 3551—3586 | 36 Part 242 |
| | 50 Part 100 |
| 3559 | 10 Part 860 |
| | 42 Part 72 |
| 3565 | 28 Parts 527, 571 |
| 3568—3569 | 28 Part 571 |
| 3568 | 28 Part 523 |
| 3569 | 28 Part 527 |
| 3571 | 10 Parts 860, 1048 |
| | 28 Part 545 |
| | 42 Part 72 |
| 3582 | 28 Part 571 |
| 3621—3622 | 28 Parts 500, 501, 505, 511—513, 522—524, 527, 540—545, 547—552, 570, 571 |
| 3621 | 28 Part 553, |
| 3622 | 28 Part 553 |
| 3624 | 28 Parts 500, 501, 505, 511—513, 522—524, 527, 540—545, 547—553, 570, 571 |
| 3663 | 28 Part 545 |
| 4001—4002 | 28 Part 26 |
| 4001 | 28 Parts 500, 501, 503, 505, 511—513, 522—524, 527, 540—543, 545, 547—553, 570—572 |
| 4001 note | 28 Part 505 |
| 4002 | 8 Parts 236, 241 |
| 4003 | 28 Part 503 |
| 4005 | 28 Parts 549, 551 |
| 4012 | 28 Part 511 |
| 4013 | 8 Parts 236, 241 |
| 4042 | 28 Parts 67, 70, 500, 501, 503, 505, 511—513, 522—524, 527, 540—543, 545, 547—550, 552, 553, 570—572 |
| 4045 | 28 Part 549 |
| 4046 | 28 Part 524 |
| 4081—4082 | 28 Parts 500, 501, 503, 505, 511—513, 522—524, 527, 540—545, 547—550, 552, 553, 570—572 |
| 4100—4115 | 28 Part 527 |
| 4126 | 28 Parts 301, 302, 345, 545, 553 |
| 4161—4166 | 28 Parts 501, 522, 523, 527, 541, 544, 550, 570, 571 |

| 18 U.S.C.—Continued | CFR |
|---|---|
| 4162—4165 | 28 Part 551 |
| 4201—4218 | 28 Parts 527, 571 |
| 4203—4204 | 28 Part 2 |
| 4203 | 28 Part 16 |
| 4205 | 28 Part 572 |
| 4241—4247 | 28 Part 549 |
| 4251—4255 | 28 Part 550 |
| 4351—4353 | 28 Parts 66, 67, 69, 70 |
| 5003 | 28 Part 527 |
| 5006—5024 | 28 Parts 500, 501, 503, 505, 511—513, 522—524, 527, 540—543, 545, 547—550, 553, 570, 571 |
| 5006—5014 | 28 Part 541 |
| 5006 | 28 Part 552 |
| 5015 | 28 Parts 543, 551, 572 |
| 5017 | 28 Part 2 |
| 5024 | 28 Part 552 |
| 5031—5042 | 28 Part 571 |
| 5039 | 28 Parts 500, 501, 503, 505, 511—513, 522—524, 527, 540—543, 545, 547—550, 552, 553, 570, 572 |
| 5041 | 28 Part 2 |
| 6002 | 14 Part 13 |
| | 16 Part 3 |
| | 49 Part 1503 |
| 6004 | 16 Part 3 |

| 19 U.S.C. | |
|---|---|
| 1 | 19 Parts 24, 101 |
| 2 | 19 Part 101 |
| 58a—58c | 19 Part 24 |
| 58b | 19 Parts 101, 122 |
| 58c | 19 Part 111 |
| 66 | 19 Parts 4, 7, 10—12, 18—19, 24, 37, 54, 101—103, 111—115, 118, 122, 123, 125, 127, 128, 132—134, 141—148, 151, 152, 158, 159, 161—163, 171—177, 181, 191, 192 |
| 81a—81u | 15 Part 400 |
| | 19 Part 146 |
| 81a—81b | 15 Part 400 |
| 81c | 19 Part 191 |
| | 27 Parts 19, 25-26, 251, 252 |
| 81f | 15 Part 400 |
| 81j | 15 Part 400 |
| 81l—81s | 15 Part 400 |
| 197—198 | 19 Part 24 |
| 261 | 19 Part 24 |
| 267 | 19 Part 24 |
| 288 | 19 Part 4 |
| 293—294 | 19 Part 4 |
| 332 | 19 Part 24 |
| 482 | 19 Part 162 |
| 794 | 32 Part 1906 |
| 1202 | 7 Parts 6, 1530 |
| | 9 Part 151 |
| | 15 Parts 30, 301, 315 |
| | 19 Parts 7, 10—12, 18, 19, 24, 54, 101, 102, 111, 114, 123, 125, 128, 132—134, 145, 146, 148, 151, 177, 181, 191 |
| | 27 Parts 251, 252 |
| | 50 Parts 10, 13, 15 |
| 1202 note | 7 Part 6 |
| | 14 Part 1214 |
| | 15 Part 303 |
| | 19 Part 351 |
| 1303 | 19 Parts 207, 353 |

| 19 U.S.C.—Continued | CFR |
|---|---|
| 1303 note | 19 Part 351 |
| 1304 | 19 Parts 134, 159 |
| 1305 | 19 Parts 12, 145 |
| 1306 | 7 Part 330 |
|  | 9 Parts 92—94, 98, 130 |
| 1309 | 19 Part 191 |
|  | 27 Part 252 |
| 1311—1312 | 19 Parts 19, 125, 127 |
| 1311 | 27 Parts 19, 252 |
| 1313 | 19 Part 191 |
| 1315 | 19 Parts 141, 145, 152, 159 |
| 1321 | 19 Parts 10, 128, 159 |
| 1322 | 19 Parts 4, 123 |
| 1331 | 19 Part 201 |
| 1333 | 19 Parts 201, 210 |
| 1335 | 19 Parts 200—202, 204—206, 210, 213 |
| 1336 | 19 Part 207 |
| 1337 | 19 Part 210 |
| 1339 | 19 Part 213 |
| 1342 | 19 Part 210 |
| 1401a | 19 Parts 141, 152 |
| 1402 | 19 Part 141 |
| 1411—1414 | 19 Part 101 |
| 1431 | 19 Parts 103, 122, 123 |
| 1433 | 19 Parts 122, 123 |
| 1436 | 19 Parts 4, 122, 123 |
| 1448 | 19 Parts 19, 122, 123, 141, 142 |
| 1450—1454 | 19 Part 123 |
| 1450 | 19 Parts 19, 24 |
| 1451 | 19 Part 24 |
| 1452 | 19 Part 24 |
| 1456 | 19 Part 24 |
| 1457—1458 | 19 Part 4 |
| 1459—1462 | 19 Part 123 |
| 1459—1461 | 19 Part 162 |
| 1459 | 19 Part 122 |
| 1460 | 19 Part 151 |
| 1461—1462 | 19 Part 148 |
| 1465 | 19 Part 123 |
| 1466 | 19 Part 4 |
| 1467 | 19 Part 162 |
| 1481 | 19 Parts 10, 141, 143, 145, 147, 151 |
| 1484—1485 | 19 Part 141 |
| 1484—1485 | 19 Parts 127, 145 |
| 1484 | 15 Part 30 |
|  | 19 Parts 10, 19, 111, 114, 123, 125, 127, 128, 132, 141, 142, 144, 147, 151, 163, 177 |
| 1485 | 19 Parts 24, 127 |
| 1486 | 19 Parts 4, 141 |
| 1487 | 19 Part 141 |
| 1490—1493 | 19 Part 127 |
| 1490 | 19 Parts 4, 141 |
| 1496 | 19 Parts 148, 162 |
| 1498—1499 | 19 Part 141 |
| 1498 | 19 Parts 4, 10, 111, 123, 128, 141, 143, 145, 148 |
| 1499—1500 | 19 Part 152 |
| 1499 | 19 Parts 19, 118, 151, 174 |
| 1500 | 19 Parts 152, 159 |
| 1501 | 19 Parts 145, 152 |
| 1502 | 19 Parts 152, 177 |
| 1502—1503 | 19 Part 152 |
| 1504 | 19 Part 159 |
| 1505 | 19 Parts 4, 24, 141, 159 |
| 1506 | 19 Part 127 |

| 19 U.S.C.—Continued | CFR |
|---|---|
| 1507 | 19 Parts 151, 159 |
| 1508 | 19 Parts 10, 132, 163 |
| 1509 | 19 Part 163 |
| 1510 | 19 Part 163 |
| 1514—1515 | 19 Part 174 |
| 1514 | 19 Parts 145, 191 |
| 1516 | 19 Parts 175, 159 |
| 1516a | 19 Part 356 |
| 1520 | 19 Parts 24, 173 |
| 1524 | 19 Part 24 |
| 1526 | 19 Part 133 |
| 1527 | 19 Part 12 |
| 1551—1553 | 19 Part 18 |
| 1551 | 19 Parts 19, 112, 113, 123, 128 |
| 1552—1553 | 19 Part 142 |
| 1552 | 19 Part 132 |
| 1553—1554 | 19 Part 123 |
| 1555—1557 | 19 Parts 19, 125 |
| 1555—1556 | 19 Part 128 |
| 1555 | 19 Part 144 |
| 1557—1558 | 19 Part 142, 159 |
| 1557 | 19 Parts 24, 132, 144, 151, 159, 191 |
| 1558 | 19 Parts 133, 159 |
| 1559 | 19 Part 127 |
| 1560—1562 | 19 Part 19 |
| 1562—1563 | 19 Part 144 |
| 1562 | 19 Parts 24, 151 |
| 1563 | 19 Parts 127, 158 |
| 1564 | 19 Part 141 |
| 1565 | 19 Parts 19, 112, 113, 123, 128 |
| 1581—1582 | 19 Part 162 |
| 1581 | 19 Part 4 |
| 1583—1586 | 19 Part 4 |
| 1584 | 19 Parts 123, 151 |
| 1590 | 19 Part 122 |
| 1592 | 19 Parts 151, 162, 171 |
| 1593a | 19 Parts 162, 171, 191 |
| 1594 | 19 Parts 122, 162 |
| 1595 | 19 Parts 123, 161, 162 |
| 1595a | 19 Parts 162, 171 |
| 1600 | 19 Part 161 |
| 1602—1624 | 50 Part 12 |
| 1602 | 19 Part 162 |
| 1605 | 19 Part 171 |
| 1606—1608 | 21 Part 1316 |
| 1607 | 27 Part 72 |
| 1610 | 21 Part 1316 |
|  | 27 Part 72 |
| 1612—1613 | 27 Part 72 |
| 1613 | 21 Part 1316 |
|  | 28 Part 9 |
| 1614 | 19 Part 171 |
| 1618 | 19 Parts 123, 145, 171, 172 |
|  | 21 Part 1316 |
|  | 27 Part 72 |
|  | 28 Part 9 |
| 1619 | 19 Part 161 |
| 1623—1624 | 19 Parts 7, 10, 18, 19, 24, 54, 101, 102, 111, 114, 118, 122, 123, 125, 127, 132, 141, 145—148, 151, 152, 172, 191 |
| 1623 | 19 Parts 24, 112, 113, 133 |
|  | 26 Part 48 |
| 1624 | 19 Parts 11—12, 19, 24, 102, 103, 111—113, 115, 123, 128, 133, 134, 141—145, 148, 151, 152, 158, 159, 161—163, 171, 173—178, 181, 191, 192 |

| 21 U.S.C.—Continued | CFR |
|---|---|
| | 880, 882, 884, 886, 888, 890, 892 |
| 360f | 21 Parts 17, 895 |
| 360h—360j | 21 Parts 3, 50, 56, 58, 71, 180, 361, 430, 431, 809, 812, 820, 897, 1003, 1010 |
| 360h—360i | 21 Parts 571, 610, 821, 895 |
| 360h | 21 Parts 660, 810 |
| 360l—360j | 21 Parts 801, 806, 860, 1002 |
| 360i | 21 Parts 17, 660, 800, 803, 807, 822, 862, 874, 900 |
| 360j | 21 Parts 17, 60, 310, 606, 803, 807, 808, 862, 864, 866, 868, 870, 872, 876, 878, 880, 882, 884, 886, 888, 890, 892 |
| 360k | 21 Parts 800, 808 |
| 360l | 21 Parts 26, 820, 822, 876, 878 |
| 360m | 21 Part 26 |
| 360aa—360aaa-6 | 21 Part 99 |
| 360aa—360dd | 21 Part 316 |
| 360aa | 21 Part 316 |
| 360bb | 21 Part 316 |
| 360cc | 21 Part 316 |
| 360gg—360ss | 21 Parts 3, 201, 1020 |
| 360hh—360ss | 21 Parts 1000, 1002 |
| 360nn | 21 Part 900 |
| 361—363 | 21 Part 701 |
| 361—362 | 21 Parts 250, 501, 505, 700, 710, 730, 740, 800 |
| 361 | 21 Parts 2, 70, 71, 73, 74, 300, 310, 500 |
| 362 | 21 Parts 1, 73, 74, 720 |
| 371—372 | 21 Parts 2, 610, 660, 809, 812 |
| 371 | 16 Parts 1502, 1507, 1701, 1702 21 Parts 1, 3, 11, 17, 19, 21, 26, 50, 54, 56, 58, 60, 70, 71, 73, 74, 80—82, 99—102, 104—111, 113, 114, 120, 122, 123, 129—131, 133, 135—137, 139, 145, 146, 150, 152, 155, 156, 158, 160, 161, 163—166, 168—172, 180—182, 184, 186, 189, 200—203, 205—208, 210, 211, 225, 226, 250, 290, 291, 299, 300, 310, 312, 314, 316, 320, 328—333, 336, 338, 340, 343, 341, 344, 346—349, 352, 355, 357, 358, 361, 369, 371, 444, 446, 448—450, 452, 453, 455, 460, 500—502, 509—511, 514, 515, 530, 539, 540, 544, 548, 555, 556, 558, 570, 571, 579, 582, 584, 589, 600, 606, 607, 630, 640, 660, 680, 700, 701, 710, 720, 730, 740, 800, 801, 803, 806—810, 814, 820, 821, 822, 860—862, 864, 866, 868, 870, 872, 874, 876, 878, 880, 882, 884, 886, 888, 890, 892, 895, 897, 898, 1002, 1003, 1010, 1020, 1030, 1040, 1050, 1240, 1250 40 Parts 23, 160, 174, 177—180, 186 |
| 372 | 21 Parts 54, 814 |
| 373—375 | 21 Part 814 |
| 373—374 | 21 Part 179 |
| 373 | 21 Part 54 |
| 374—375 | 21 Part 200 |
| 374 | 21 Parts 1—2, 26, 110, 54, 99, 113, 114, 120, 123, 129, 200, 201, 203, 205, 207, 208, 210, 211, 225, 226, 310, 314, 600, 601, 606, 607, 610, 700, 701, 710, 720, 730, 740, 801, 803, 806, 807, 809, 810, 812, 814, 820, 821, 822, 860, 861, 897, 898, 900, 1002 |
| 375 | 21 Parts 54, 250, 310, 810 |
| 376 | 21 Part 54 |

| 21 U.S.C.—Continued | CFR |
|---|---|
| 379 | 21 Parts 54, 814 |
| 379e | 21 Parts 3, 50, 56, 58, 60, 70, 71, 104—1299, 201, 310, 314, 812 |
| 381 | 21 Parts 3, 26, 50, 56, 58, 71, 120, 180, 203, 207, 320, 361, 430, 431, 514, 607, 610, 807, 809, 812, 814, 820, 1003, 1010, 1020, 1030, 1040, 1050 |
| 382 | 21 Parts 1, 26, 812 |
| 383 | 21 Parts 26, 812, 820 |
| 393 | 21 Parts 1, 26, 120, 123, 207, 607, 807, 897 |
| 394 | 21 Part 3 |
| 451 et seq | 7 Part 15 9 Part 391 |
| 451—470 | 9 Parts 300, 416, 417, 424, 441, 500 21 Part 381 |
| 463 | 7 Part 1 9 Part 325 |
| 467f | 21 Parts 5, 10, 12—16 |
| 601 et seq | 7 Part 15 9 Part 307 |
| 601—695 | 9 Parts 300—322, 325, 327, 329, 331, 335, 391, 416, 417, 424, 441, 500 |
| 606 note | 9 Part 335 |
| 607 | 9 Part 317 |
| 612—614 | 9 Part 91 |
| 612—613 | 9 Parts 160—162 |
| 618 | 9 Part 91 |
| 621 | 7 Parts 1, 329 9 Parts 305, 316, 319, 325 |
| 624 | 9 Part 325 |
| 645 | 9 Part 331 |
| 657 | 21 Part 1312 |
| 679 | 21 Parts 5, 10, 12—16 |
| 801—886 | 21 Part 5 |
| 802 | 21 Part 1310, 1313 39 Part 232 |
| 811—812 | 21 Parts 1308, 1316 |
| 821—824 | 21 Parts 1301, 1309 |
| 821—822 | 21 Part 1307 |
| 821 | 21 Parts 10, 12—16, 1302—1306, 1308 |
| 822 | 21 Part 1316 |
| 823 | 42 Part 8 |
| 825 | 21 Part 1302 |
| 826 | 21 Part 1303 |
| 827 | 21 Part 1304 |
| 828 | 21 Part 1305 |
| 829 | 21 Part 1306 |
| 830 | 21 Parts 1309, 1310, 1313, 1316 |
| 844 | 39 Part 232 |
| 844a | 28 Part 76 |
| 848 | 28 Part 524 |
| 853 | 28 Part 9 |
| 853a | 45 Part 78 49 Parts 1182, 1186 |
| 862 | 46 Part 515 49 Part 1104 |
| 871—872 | 21 Part 1316 |
| 871 | 21 Parts 1301—1310, 1313 |
| 875—876 | 28 Part 76 |
| 875 | 21 Parts 1309, 1316 |
| 877 | 21 Part 1309 |
| 880—881—1 | 21 Part 1316 |
| 881 | 19 Part 162 28 Part 9 |
| 881 note | 19 Part 171 |

*Executive Orders*—Continued     CFR

13006 .........................................41 Part 102–83
13019 ........................................29 Part 1650
        31 Part 285
13020 ......................15 Parts 730, 734, 736, 752
13022 ..........................................50 Part 38
13026 .........15 Parts 730, 732, 734, 736, 738, 740,
     742, 744, 748, 750, 768, 770, 774
13043 ..........................................43 Part 12
13047 ........................................31 Part 537
13059 .................................31 Parts 56, 5600
13067 ........................................31 Part 538
13069 ........................................31 Part 590
13088 ...............................31 Parts 586—587
13094 ..................................15 Parts 712, 713
        31 Part 539
13098 ........................................31 Part 590
13099 ........................................15 Part 744
13101 ........................................40 Part 247
13106 ..........................................5 Part 531
13121 ........................................15 Part 744
        31 Parts 586—587
13128 .................................15 Parts 710—721
13129 ........................................31 Part 545
13142 ........................................36 Part 1260
13159 ........................................31 Part 540
13162 ..........................................5 Part 315
13179 ....................................20 Parts 1, 30
        42 Parts 81, 82
13192 ...............................31 Parts 586—587
13194 ........................................31 Part 591
13206 ........................................15 Part 743
13213 ........................................31 Part 591
13219 ........................................31 Part 588
13222 .........15 Parts 732, 736, 734, 738, 740, 742,
   744, 746, 748, 752, 758, 764, 766, 770,
        772, 774
13224 ........................................15 Part 744

*Directives:*

May 17, 1972 ...............................5 Part 1301
        18 Part 3a
        22 Part 9a
        40 Part 11
Dec. 7, 1979................................44 Part 351
June 25, 1982 ..............................12 Part 403
Mar. 11, 1983...............................12 Part 403
Mar. 28, 1985...............................15 Part 378

*Memorandums:*

Nov. 10, 1961 .................................5 Part 960

*Reorganization Plans:*

1940 Plan No. 4...............................7 Part 612
1946 Plan No. 2.......................20 Parts 25, 501
        42 Part 3
1946 Plan No. 3 ....................15 Parts 9, 10, 16
      43 Parts 1870, 3590
1947 Plan No. 3 ....12 Parts 501, 505c, 511, 521—

*Reorganization Plans*—Continued     CFR

   523, 541, 563c—572a, 590
1949 Plan No. 2.......................20 Part 603
1950 Plan No. 2................................8 Part 3
      28 Parts 3, 42
1950 Plan No. 3 ....................25 Parts 150, 250
      30 Part 201
   36 Parts 63, 64, 68, 71, 72
      43 Parts 6, 1780
1950 Plan No. 5..........15 Parts 4, 15, 30, 60, 807
1950 Plan No. 6..........20 Parts 10, 701—704, 718,
   722, 725, 726, 801, 802
   29 Parts 2, 19, 70, 541, 689
      31 Part 21
1950 Plan No. 14 ........29 Parts 1, 3, 5—8, 29, 30
1950 Plan No. 19 .................20 Parts 25, 61, 501
1950 Plan No. 21 ......46 Parts 206, 222, 251, 276,
  280, 283, 294, 309, 310, 331, 381, 385,
      390, 391
1950 Plan No. 26 ...................31 Parts 8, 10, 14
      45 Parts 7, 16, 204
1953 Plan No. 2 ...........................7 Parts 2, 11
1958 Plan No. 1 ...........................32 Part 185
      46 Parts 345—347
1961 Plan No. 3........14 Parts 213, 216, 247, 384,
      385
1961 Plan No. 7........46 Parts 202, 206, 251, 276,
  280, 283, 294, 309, 310, 331, 381, 385,
   390, 391, 501, 550, 581
1965 Plan No. 2 ...........................15 Part 903
1968 Plan No. 2 ...........................24 Parts 1, 2
      49 Part 601
1968 Plan No. 3 ...........................40 Part 190
1970 Plan No. 2 ...........41 Parts 101–37, 102–33
1970 Plan No. 3 ...........................21 Part 193
  40 Parts 2, 112, 121, 160, 177—179,
      190, 194
1970 Plan No. 4 ...........................15 Part 950
      50 Part 260
1973 Plan No. 1 ............................31 Part 9
      46 Parts 345—347
1977 Plan No. 2................22 Parts 62—65, 518
1978 Plan No. 1 ........29 Parts 1614, 1620, 1621,
    1625—1627, 1690
1978 Plan No. 2 ...........5 Parts 179, 1250—1255
1978 Plan No. 3 ...........44 Parts 1, 2, 5—10, 12—
  15, 18, 59—68, 70—73, 75, 150, 151, 201,
  206, 295, 300—304, 312, 321, 323, 327,
  329—331, 350, 351, 354, 360, 361
  48 Parts 4401—4403, 4405, 4406, 4408,
 4409, 4412, 4414—4417, 4419, 4424, 4426,
  4429, 4432, 4433, 4435, 4436, 4452
1978 Plan No. 4 ..............................26 Part 1
      29 Parts 2510, 2550
1979 Plan No. 1..............................10 Part 1534
1979 Plan No. 3............................15 Part 2009
1980 Plan No. 1 ...............................10 Part 1

# Exhibit C



**U.S. Department of Justice**

Environment and Natural Resources Division

---

*Law and Policy Section*
*P.O. Box 4390*
*Washington, DC  20044-4390*

*Telephone (202) 514-1442*
*Facsimile (202) 514-4231*

Mr.
#
FCI
1900 Simler Avenue
Big Spring, TX  79720

AUG 2 8 2007

FOIA No.: FOIA-2007-001

Dear Mr. :

This letter responds to your Freedom of Information Act (FOIA) request for two letters related to the acceptance of concurrent jurisdiction over the "Prison facility FDC Seatas" and the "Federal Transfer Center in Oklahoma City." The Environment and Natural Resources Division (ENRD) received your request on August 16, 2007.  Please find enclosed seven pages of documents, which we release in their entirety.

This determination may be appealed within sixty days of the date of this letter by writing to the Co-Director, Office of Information and Privacy, U.S. Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, DC 20530-0001. You should clearly mark your envelope and letter: "Freedom of Information Appeal." See 28 C.F.R. § 16.9(a) and 5 U.S.C. § 552(a)(6)(A).

The cost of processing your request did not exceed our minimum billing threshold, so you will not be charged for this request.

If you need any further assistance, please contact Jacob Lipson at (202) 305-0641.

Sincerely,

Pauline H. Milius
Chief

Enclosure

07 2158
**FILED**

NOV 2 9 2007

**NANCY MAYER WHITTINGTON, CLERK**
**U.S. DISTRICT COURT**



**Office of the Attorney General**
**Washington, D. C. 20530**



RECEIVED

MAY - 6 1997

·· ·OE OF THE
GOVERNOR

May 1, 1997

BY CERTIFIED MAIL

The Honorable Frank Keating
Governor of Oklahoma
Oklahoma City, Oklahoma   73105

Dear Governor Keating:

On behalf of the United States, I hereby accept concurrent legislative jurisdiction over the land that presently is the site of the Federal Transfer Center (FTC) in Oklahoma City.

The State of Oklahoma recently enacted Senate Bill No. 283 to cede to the United States concurrent legislative jurisdiction over the FTC site. That bill, styled "An Act Relating to the United States; Ceding Concurrent Jurisdiction Over Certain Real Property to the United States; Reserving Concurrent Jurisdiction for Certain Purposes; Providing for the Termination of Such Jurisdiction; Providing for Codification; and Declaring an Emergency," was signed by you on April 9, 1997.  Section 1 of the Bill provides, in relevant part:

> Notwithstanding any other provision of law, concurrent jurisdiction is hereby ceded to the United States over the tract of land comprised and any tracts of land hereafter comprised within the limits of the Oklahoma City Federal Transfer Center, a facility which is leased to the United States and located at Will Rogers World Airport in Oklahoma City, County of Oklahoma. . . .  The jurisdiction so ceded shall continue no longer than the United States shall lease or own such lands or portions thereof.

Federal law provides that a state's cession of legislative jurisdiction to the United States does not take effect until accepted by the head of the federal department that has custody over the land.  40 U.S.C. § 255.  This letter constitutes the United States' acceptance of concurrent criminal and civil legislative jurisdiction over the tracts of land presently comprised within the limits of the FTC.  Enclosed is a copy of the property description for the land over which the United States accepts concurrent jurisdiction.

The Honorable Frank Keating
Page 2


        Please execute the acknowledgment of receipt of this letter
on the enclosed copy, and return that copy to:

        Michael E. Wall
        United States Department of Justice
        Environment & Natural Resources Division
        Policy, Legislation and Special Litigation Section
        950 Pennsylvania Avenue, NW, Room 2133
        P.O. Box 4390
        Washington, DC  20044-4390

Should you need any further information, please have your staff
contact Mr. Wall on (202) 514-1442, or Jane Crowell, an attorney
with the Federal Bureau of Prisons, on (202) 307-1240.

        I appreciate your assistance in this important area of
federal-state cooperation.

                            Sincerely,


                            Janet Reno

Enclosure


Receipt of the above notice of acceptance of concurrent
legislative jurisdiction over the site of the Federal Transfer
Center in Oklahoma City, Oklahoma, is hereby acknowledged this
____ day of _____, 1997.


                            Governor of Oklahoma

LEGAL DESCRIPTION
FEDERAL TRANSFER CENTER
WILL ROGERS WORLD AIRPORT
December 11, 1991

PARCEL A -

A tract of land located in the N.W. ¼, Section 34, T. 11 N., R. 4 W., I.M., Oklahoma county, Oklahoma more particularly described as follows:

Commencing at the N.W. Corner of said N.W. ¼, Section 34; thence N.89°47'22"E., along the North line of said N.W. ¼, 50.00* feet to the Point of Beginning of the tract of land herein described;

Thence N.89°47'22"E. along the North line of said N.W. ¼, 882.62 feet to a point;
Thence S.00°16'18"E. 280.00 feet to a point;
Thence S.31°30'43"W. 263.51 feet to a point;
Thence S.89°47'22"W. 586.41 feet to a point;
Thence N.66°00'00"W. 83.27 feet to a point;
Thence S.89°47'22"W. 81.50 feet to a point;
Thence N.00°16'18"W. 470.00 feet to the Point of Beginning of the tract of land herein described, containing 425,330 square feet of land.

PARCEL B -

A tract of land located in the N.W. ¼, Section 34, T. 11 N., R. 4 W., I.M., Oklahoma county, Oklahoma more particularly described as follows:

Commencing at the N.W. Corner of said N.W. ¼, Section 34; thence N.89°47'22"E., along the North line of said N.W. ¼, 1027.35* feet to the Point of Beginning of the tract of land herein described;

Thence N.89°47'22"E. 455.00 feet to a point;
Thence S.00°16'18"E. 485.00 feet to a point;
Thence S.89°47'22"W. 411.11 feet to a point;
Thence N.16°34'35"W. 156.33 feet to a point;
Thence N.00°16'18"W. 335.00 feet to the Point of Beginning of the tract of land herein described, containing 217,386 square feet of land.

* Revised 12/29/92





**Office of the Attorney General**

**Washington, D. C. 20530**

March 20, 1997

RECEIVED

MAR 27 1997

BY CERTIFIED MAIL

OFFICE OF THE GOVERNOR

The Honorable Gary Locke
Governor of Washington
P.O. Box 40002
Olympia, WA  98504

Dear Governor Locke:

On behalf of the United States, I hereby accept concurrent
legislative jurisdiction over the site of a Federal Bureau of
Prisons facility, near Seattle and Tacoma, Washington, to be used
for prisoner detention, correction, and other purposes.  As you
may know, construction of the facility, presently known as FDC
Seatac, is well under way.  The facility is soon expected to
begin operations.

The State of Washington has consented to the acquisition by
the United States of land acquired for federal purposes, see
Wash. Rev. Code Ann. § 37.04.010, and has ceded concurrent
criminal and civil legislative jurisdiction over such land to the
United States for all purposes for which the United States
acquired the land, see Wash. Rev. Code Ann. § 37.04.020; see also
Department of Labor and Industries v. Dirt & Aggregate, Inc., 120
Wash.2d 49, 52-53, 837 P.2d 1018, 1021 (Wash. 1992) (holding that
the state may cede legislative jurisdiction to the United States,
and that the scope of the federal jurisdiction is governed by the
terms of the cession).

Federal law provides that a state's cession of legislative
jurisdiction to the United States does not take effect until
accepted by the head of the federal department that has custody
over the land.  40 U.S.C. § 255.  This letter constitutes the
United States' acceptance of concurrent criminal and civil
jurisdiction over the site of the facility.  Copies of the

The Honorable Gary Locke
Page 2

Declaration of Taking and general warranty deeds for the site are enclosed.

Concurrent legislative jurisdiction will mutually benefit the State of Washington and the United States. Absent federal legislative jurisdiction, the state would have the entire burden of prosecuting offenses that might be committed at the facility, except those offenses that violate federal law even when committed outside areas of federal legislative jurisdiction. Concurrent jurisdiction enables the United States to investigate and prosecute certain offenses when appropriate, without displacing state authorities. Criminal offenses perpetrated by or against federal prisoners confined at the institution can be investigated by the Federal Bureau of Investigation and prosecuted by the United States Attorney. Thus, cession of concurrent jurisdiction may relieve the State of some of the burden of investigating and prosecuting criminal offenses that occur at the federal institution. In some situations, it might be more appropriate for the State to investigate and prosecute violations of state law, and the State could do so.

Please execute the acknowledgment of receipt of this letter on the enclosed copy, and return that copy to:

Michael E. Wall
United States Department of Justice
Environment & Natural Resources Division
Policy, Legislation and Special Litigation Section
950 Pennsylvania Avenue, NW, Room 2133
P.O. Box 4390
Washington, DC 20044-4390.

Should you need any further information, please have your staff contact Mr. Wall on (202) 514-1442, or Jeffrey J. Limjoco, an attorney with the Federal Bureau of Prisons, on (202) 307-1240.

The Honorable Gary Locke
Page 3

I appreciate your assistance in this important area of federal-state cooperation.

Sincerely,

Janet Reno

Enclosures


Receipt of the above notice of acceptance of concurrent legislative jurisdiction over the site of the Federal Detention Center near Seattle and Tacoma, Washington (FDC Seatac) is hereby acknowledged this _11th_ day of _April_____, 1997.

Governor of Washington

# Exhibit D

Evidentary Hearing
[ not submitted ]

07 2158

FILED

NOV 2 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# Exhibit E



UNITED STATES        OF AMERICA

# Congressional Record

PROCEEDINGS AND DEBATES OF THE 80*th* CONGRESS
SECOND SESSION

## VOLUME 94—PART 8

JULY 26, 1948, TO DECEMBER 31, 1948
(PAGES 9353 TO 10316)

UNITED STATES GOVERNMENT PRINTING OFFICE, WASHINGTON, 1948

07 2158

**FILED**

NOV 2 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Congressional
Record

VOL. 94
PART 8
PAGES 9353 TO 10316

80TH CONGRESS
2D SESSION
JULY 26, 1948
TO
DECEMBER 31, 1948



# Congressional Record

United States
of America

PROCEEDINGS AND DEBATES OF THE 80th CONGRESS, SECOND SESSION

## SENATE

### MONDAY, JULY 26, 1948

The Senate reassembled this day in its Chamber at the Capitol, in the city of Washington, in pursuance of the proclamation of the President of the United States of the 15th day of July 1948.

ARTHUR VANDENBERG, President pro tempore, called the Senate to order at 12 o'clock noon.

Rev. Bernard Braskamp, D. D., pastor of the Gunton-Temple Memorial Presbyterian Church, Washington, D. C., offered the following prayer:

O Thou God of infallible wisdom, we have entered upon days which are fraught with perplexing problems and heavy responsibilities, but also with glorious opportunities and possibilities.

We pray that we may have the interpreting light and the clear and confident leading of Thy spirit in all our deliberations and decisions.

May the ideals and principles of our blessed Lord not only stir our emotions but our wills, and may every lofty God-inspired sentiment be translated into action and achievement.

Grant that it may be the goal of all our aspirations to glorify Thy great and holy name and to build Thy kingdom of peace and good will among men and nations.

Hear us for the sake of the Christ. Amen.

The PRESIDENT pro tempore. The proclamation of the President reconvening the Congress will be read by the clerk.

The Chief Clerk (Edward E. Mansur, Jr.) read the proclamation, as follows:

CONVENING THE CONGRESS BY THE PRESIDENT OF THE UNITED STATES OF AMERICA—A PROCLAMATION

Whereas the public interest requires that the Congress of the United States should be convened at 12 o'clock noon on Monday, the 26th day of July 1948, to receive such communication as may be made by the Executive;

Now, therefore, I, Harry S. Truman, President of the United States of America, do hereby proclaim and declare that an extraordinary occasion requires the Congress of the United States to convene at the Capitol in the city of Washington on Monday, the 26th day of July 1948, at 12 o'clock noon, of which all persons who shall at that time be entitled to act as Members thereof are hereby required to take notice.

In witness whereof, I have hereunto set my hand and caused to be affixed the great seal of the United States.

XCIV——590

Done at the city of Washington this 15th day of July, in the year of our Lord 1948, and of the independence of the United States of America the one hundred and seventy-third.

HARRY S. TRUMAN.

By the President:
G. C. MARSHALL,
Secretary of State.

### CALL OF THE ROLL

Mr. WHERRY. I suggest the absence of a quorum.

The PRESIDENT pro tempore. The clerk will call the roll.

The Chief Clerk called the roll, and the following Senators answered to their names:

| | | |
|---|---|---|
| Aiken | Hickenlooper | O'Daniel |
| Baldwin | Hill | O'Mahoney |
| Barkley | Hoey | Pepper |
| Brewster | Holland | Reed |
| Brooks | Jenner | Revercomb |
| Butler | Johnson, Colo. | Robertson, Va. |
| Byrd | Johnston, S. C. | Robertson, Wyo. |
| Cain | Kem | Russell |
| Capehart | Kilgore | Saltonstall |
| Capper | Knowland | Smith |
| Connally | Langer | Sparkman |
| Cooper | Lodge | Stennis |
| Cordon | Lucas | Stewart |
| Donnell | McCarthy | Taft |
| Downey | McClellan | Taylor |
| Eastland | McFarland | Thomas, Okla. |
| Ecton | McGrath | Thomas, Utah |
| Ellender | McMahon | Thye |
| Feazel | Magnuson | Tobey |
| Ferguson | Martin | Umstead |
| George | Maybank | Vandenberg |
| Green | Millikin | Watkins |
| Gurney | Moore | Wherry |
| Hatch | Murray | Wiley |
| Hawkes | Myers | Williams |
| Hayden | O'Conor | Young |

Mr. WHERRY. I announce that the Senator from Minnesota (Mr. BALL), the Senator from Ohio (Mr. BRICKER), the Senator from Delaware (Mr. BUCK), the Senator from South Dakota (Mr. BUSHFIELD), the Senator from Vermont (Mr. FLANDERS), the Senator from Oregon (Mr. MORSE), and the Senator from Iowa (Mr. WILSON) are necessarily absent.

The Senator from New Hampshire (Mr. BRIDGES) is detained on official business.

The Senator from Idaho (Mr. DWORSHAK) is absent on official state business.

The Senator from New York (Mr. IVES) is absent because of illness in his family.

The Senator from Nevada (Mr. MALONE) is absent on official committee business of the Committee on Public Works.

Mr. LUCAS. I announce that the Senator from New Mexico (Mr. CHAVEZ) is unavoidably detained.

The Senator from Arkansas (Mr. FULBRIGHT), the Senator from Nevada (Mr. McCARRAN), the Senator from Tennessee (Mr. McKELLAR), the Senator from Maryland (Mr. TYDINGS), and the Sena-

tor from New York (Mr. WAGNER) are necessarily absent.

The PRESIDENT pro tempore. Seventy-eight Senators having answered to their names, a quorum is present.

### THE JOURNAL

Mr. WHERRY. Mr. President, I ask unanimous consent that, without reading, the Journal of the proceedings of the Senate for the calendar days Friday, June 18, Saturday, June 19, and Sunday, June 20, 1948, be approved.

The PRESIDENT pro tempore. Without objection, the order is made.

### ENROLLED BILLS AND JOINT RESOLUTIONS SIGNED AFTER ADJOURNMENT

Subsequent to the adjournment of the Senate on June 20, 1948, the President pro tempore, under the authority of House Concurrent Resolution 219, signed the following enrolled bills and joint resolutions, which had previously been signed by the Speaker of the House of Representatives:

S. 165. An act for the relief of Doris E. Snyder;

S. 418. An act to provide for water-pollution-control activities in the Public Health Service of the Federal Security Agency and in the Federal Works Agency, and for other purposes;

S. 595. An act to provide that the rates of compensation for disabilities incurred in active military or naval service other than in a period of war service shall be equal to 80 percent of the rates payable for similar disabilities incurred during active service in time of war;

S. 1243. An act to provide for the payment of revenues from certain lands into the tribal funds of the Confederated Tribes of the Warm Springs Reservation of Oregon, and for other purposes;

S. 1260. An act to create a commission to hear and determine the claims of certain motor carriers;

S. 1322. An act to provide a Federal charter for the Commodity Credit Corporation;

S. 1683. An act to confer jurisdiction on the State of New York with respect to offenses committed on Indian reservations within such State;

S. 1715. An act for the relief of Archie Hamilton and Delbert Hamilton;

S. 1717. An act for the relief of the estate of William R. Stigall, deceased;

S. 1969. An act to amend the Philippine Rehabilitation Act of 1946 in connection with the training of Filipinos as provided for in title III;

S. 2217. An act conferring jurisdiction upon the Court of Claims of the United States to hear, determine, and render judgment upon the joint claims of Silas Mason Co., Inc., Walsh Construction Co., and Atkinson-Kier Co.;

S. 2242. An act to authorize for a limited period of time the admission into the United States of certain European displaced persons for permanent residence, and for other purposes;

# Exhibit F



# US CODE COLLECTION



Next

## Sec. 4001. – Limitation on detention; control of prisons

**(a)**

No citizen shall be imprisoned or otherwise detained by the United States except pursuant to an Act of Congress.

**(b)**

**(1)**

The control and management of Federal penal and correctional institutions, except military or naval institutions, shall be vested in the Attorney General, who shall promulgate rules for the government thereof, and appoint all necessary officers and employees in accordance with the civil-service laws, the Classification Act, as amended, and the applicable regulations.

**(2)**

The Attorney General may establish and conduct industries, farms, and other activities and classify the inmates; and provide for their proper government, discipline, treatment, care, rehabilitation, and reformation

*Search this title:*

Search Title 18

Notes
Updates
Parallel authorities (CFR)
Topical references

Next

 © copyright       about us       send email

07 2158
**FILED**

NOV 2 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

TITLE 18 > PART III > CHAPTER 301 > § 4001

NOTES:

## Source

(June 25, 1948, ch. 645, 62 Stat. 847; Pub. L. 92–128, § 1(a), (b), Sept. 25, 1971, 85 Stat. 347.)

## Historical and Revision Notes

Based on title 18, U.S.C., 1934 ed., §§ 741 and 753e (Mar. 3, 1891, ch. 529, §§ 1, 4, 26 Stat. 839; May 14, 1930, ch. 274, § 6, 46 Stat. 326).

This section consolidates said sections 741 and 753e with such changes of language as were necessary to effect consolidation.

"The Classification Act, as amended," was inserted more clearly to express the existing procedure for appointment of officers and employees as noted in letter of the Director of Bureau of Prisons, June 19, 1944.



# US CODE COLLECTION



Prev | Next

**TITLE 28 > PART II > CHAPTER 35 > Sec. 547.**

## Sec. 547. - Duties

Except as otherwise provided by law, each United States attorney, within his district, shall -

**(1)**

prosecute for all offenses against the United States;

**(2)**

prosecute or defend, for the Government, all civil actions, suits or proceedings in which the United States is concerned;

**(3)**

appear in behalf of the defendants in all civil actions, suits or proceedings pending in his district against collectors, or other officers of the revenue or customs for any act done by them or for the recovery of any money exacted by or paid to these officers, and by them paid into the Treasury;

**(4)**

institute and prosecute proceedings for the collection of fines, penalties, and forfeitures incurred for violation of any revenue law, unless satisfied on investigation that justice does not require the proceedings; and

**(5)**

make such reports as the Attorney General may direct

*Search this title:*

Search Title 28

Notes
Updates
Parallel authorities (CFR)
Topical references

© copyright    about us    send email

[Code of Federal Regulations]
[Title 21, Volume 9]
Revised as of April 1, 2004]
rom the U.S. Government Printing Office via GPO Access
[CITE: 21CFR1300.01]

[Page 5-9]

TITLE 21-FOOD AND DRUGS

CHAPTER II--DRUG ENFORCEMENT ADMINISTRATION, DEPARTMENT OF JUSTICE

PART 1300_DEFINITIONS--Table of Contents

Sec. 1300.01  Definitions relating to controlled substances.

(a) Any term not defined in this part shall have the definition set
forth in section 102 of the Act (21 U.S.C. 802), except that certain
terms used in part 1316 of this chapter are defined at the beginning of
each subpart of that part.
(b) As used in parts 1301 through 1308 and part 1312 of this
chapter, the following terms shall have the meanings specified:
(1) The term Act means the Controlled Substances Act, as amended (84
Stat. 1242; 21 U.S.C. 801) and/or the Controlled Substances Import and
Export Act, as amended (84 Stat. 1285; 21 U.S.C. 951).
(2) The term Administration means the Drug Enforcement
.dministration.
(3) The term Administrator means the Administrator of the Drug
Enforcement Administration. The Administrator has been delegated
authority under the Act by the Attorney General (28 CFR 0.100).
(4) The term anabolic steroid means any drug or hormonal substance,
chemically and pharmacologically related to testosterone (other than
estrogens, progestins, and corticosteroids) that promotes muscle growth,
and includes:
(i) Boldenone;
(ii) Chlorotestosterone (4-chlortestosterone);
(iii) Clostebol;
(iv) Dehydrochlormethyltestosterone;
(v) Dihydrotestosterone (4-dihydrotestosterone);
(vi) Drostanolone;
(vii) Ethylestrenol;
(viii) Fluoxymesterone;
(ix) Formebulone (formebolone);
(x) Mesterolone;
(xi) Methandienone;
(xii) Methandranone;
(xiii) Methandriol;
(xiv) Methandrostenolone;
(xv) Methenolone;
(xvi) Methyltestosterone;
(xvii) Mibolerone;
(xviii) Nandrolone;

(J) Oxycodone;

(K) Oxymorphone;

(L) Thebaine;

(M) Mixed alkaloids of opium listed in Section 1308.12(b)(2) of this chapter;

(N) Cocaine; and

(O) Ecgonine;

(v) Each of the opiates, including its isomers, esters, ethers, salts, and salts of isomers, esters, and ethers whenever the existence of such isomers, esters, ethers, and salts is possible within the specific chemical designation, listed in Sec. 1308.12(c) of this chapter; and

(vi) Methamphetamine, its salts, isomers, and salts of its isomers;

(vii) Amphetamine, its salts, optical isomers, and salts of its optical isomers;

(viii) Phenmetrazine and its salts;

(ix) Methylphenidate;

(x) Each of the substances having a depressant effect on the central nervous system, including its salts, isomers, and salts of isomers whenever the existence of such salts, isomers, and salts of isomers is possible within the specific chemical designation, listed in Sec. 1308.12(e) of this chapter.

(6) The term commercial container means any bottle, jar, tube, ampule, or other receptacle in which a substance is held for distribution or dispensing to an ultimate user, and in addition, any box or package in which the receptacle is held for distribution or dispensing to an ultimate user. The term commercial container does not include any package liner, package insert or other material kept with or within a commercial container, nor any carton, crate, drum, or other package in which commercial containers are stored or are used for shipment of controlled substances.

(7) The term compounder means any person engaging in maintenance or detoxification treatment who also mixes, prepares, packages or changes the dosage form of a narcotic drug listed in Schedules II, III, IV or V for use in maintenance or detoxification treatment by another narcotic treatment program.

(8) The term controlled substance has the meaning given in section 802(6) of Title 21, United States Code (U.S.C.).

(9) The term customs territory of the United States means the several States, the District of Columbia, and Puerto Rico.

(10) The term detoxification treatment means the dispensing, for a period of time as specified below, of a narcotic drug or narcotic drugs in decreasing doses to an individual to alleviate adverse physiological or psychological effects incident to withdrawal from the continuous or sustained use of a narcotic drug and as a method of bringing the individual to a narcotic drug-free state within such period of time. There are two types of detoxification treatment: Short-term detoxification treatment and long-term detoxification treatment.

(i) Short-term detoxification treatment is for a period not in excess of 30 days.

(ii) Long-term detoxification treatment is for a period more than 30 days but not in excess of 180 days.

(11) The term dispenser means an individual practitioner, institutional practitioner, pharmacy or pharmacist who dispenses a controlled substance.

(12) The term export means, with respect to any article, any taking out or removal of such article from the jurisdiction of the United States (whether or not such taking out or removal constitutes an exportation within the meaning of the customs and related laws of the United States).

(13) The term exporter includes every person who exports, or who acts as an export broker for exportation of, controlled substances listed in any schedule.

(14) The term hearing means:

(i) In part 1301 of this chapter, any hearing held for the granting, denial,

[[Page 7]]

revocation, or suspension of a registration pursuant to sections 303, 304, and 1008 of the Act (21 U.S.C. 823, 824 and 958).

(ii) In part 1303 of this chapter, any hearing held regarding the determination of aggregate production quota or the issuance, adjustment, suspension, or denial of a procurement quota or an individual manufacturing quota.

(iii) In part 1308 of this chapter, any hearing held for the issuance, amendment, or repeal of any rule issuable pursuant to section 201 of the Act (21 U.S.C. 811).

(15) The term import means, with respect to any article, any bringing in or introduction of such article into either the jurisdiction of the United States or the customs territory of the United States, and from the jurisdiction of the United States into the customs territory of the United States (whether or not such bringing in or introduction constitutes an importation within the meaning of the tariff laws of the United States).

(16) The term importer includes every person who imports, or who acts as an import broker for importation of, controlled substances listed in any schedule.

(17) The term individual practitioner means a physician, dentist, veterinarian, or other individual licensed, registered, or otherwise permitted, by the United States or the jurisdiction in which he/she practices, to dispense a controlled substance in the course of professional practice, but does not include a pharmacist, a pharmacy, or an institutional practitioner.

(18) The term institutional practitioner means a hospital or other person (other than an individual) licensed, registered, or otherwise permitted, by the United States or the jurisdiction in which it practices, to dispense a controlled substance in the course of professional practice, but does not include a pharmacy.

(19) The term interested person means any person adversely affected or aggrieved by any rule or proposed rule issuable pursuant to section 201 of the Act (21 U.S.C. 811).

(20) The term inventory means all factory and branch stocks in finished form of a basic class of controlled substance manufactured or

otherwise acquired by a registrant, whether in bulk, commercial
containers, or contained in pharmaceutical preparations in the
possession of the registrant (including stocks held by the registrant
under separate registration as a manufacturer, importer, exporter, or
distributor).

(21) The term isomer means the optical isomer, except as used in
Sec. 1308.11(d) and Sec. 1308.12(b)(4) of this chapter. As used in
Sec. 1308.11(d) of this chapter, the term isomer means the optical,
positional, or geometric isomer. As used in Sec. 1308.12(b)(4) of this
chapter, the term isomer means the optical or geometric isomer.

(22) The term jurisdiction of the United States means the customs
territory of the United States, the Virgin Islands, the Canal Zone,
Guam, American Samoa, and the Trust Territories of the Pacific Islands.

(23) The term label means any display of written, printed, or
graphic matter placed upon the commercial container of any controlled
substance by any manufacturer of such substance.

(24) The term labeling means all labels and other written, printed,
or graphic matter:

(i) Upon any controlled substance or any of its commercial
containers or wrappers, or

(ii) Accompanying such controlled substance.

(25) The term Long Term Care Facility (LTCF) means a nursing home,
retirement care, mental care or other facility or institution which
provides extended health care to resident patients.

(26) The term maintenance treatment means the dispensing for a
period in excess of twenty-one days, of a narcotic drug or narcotic
drugs in the treatment of an individual for dependence upon heroin or
other morphine-like drug.

(27) The term manufacture means the producing, preparation,
propagation, compounding, or processing of a drug or other substance or
the packaging or repackaging of such substance, or the labeling or
relabeling of the commercial container of such substance, but does not
include the activities of a practitioner who, as an incident to his/her
administration or dispensing such

[[Page 8]]

substance in the course of his/her professional practice, prepares,
compounds, packages or labels such substance. The term manufacturer
means a person who manufactures a drug or other substance, whether under
a registration as a manufacturer or under authority of registration as a
researcher or chemical analyst.

(28) The term mid-level practitioner means an individual
practitioner, other than a physician, dentist, veterinarian, or
podiatrist, who is licensed, registered, or otherwise permitted by the
United States or the jurisdiction in which he/she practices, to dispense
a controlled substance in the course of professional practice. Examples
of mid-level practitioners include, but are not limited to, health care
providers such as nurse practitioners, nurse midwives, nurse
anesthetists, clinical nurse specialists and physician assistants who
are authorized to dispense controlled substances by the state in which
they practice.

# Exhibit G



# National Archives and Records Administration

### Office of the Federal Register

December 18, 2000

Mr.

Title 21 of the United States Code (USC) has at no time been published, in part or in its entirety, in the Federal Register. The USC is maintained by the Law Revision Council, a Congressional entity. The content of the USC is comprised of permanent laws enacted and codified by Congress. To find the original laws that added or amended any of the codified material, consult the reference notes included in the volume relating to the parts or chapters you are interested in. These notes will assist you in finding the original law included in the U.S. Statutes at Large.

Both the USC and US Statutes at Large are available through a Federal Depository Library. If you do not have access to such a library, please consult your facility librarian to seek an interlibrary loan.

Due to personnel shortages, office policy precludes our staff from conducting lengthy research requests.

If our office can be of further assistance to you, please contact us again.

Sincerely,

Brian Swidal
Customer Service Unit
Office of the Federal Register

JEFF TRANDAHL
CLERK

MARTHA C. MORRISON
DEPUTY CLERK

H-154 THE CAPITOL

# Office of the Clerk
## U.S. House of Representatives
### Washington, DC 20515-6601

June 28, 2000

Mail Stop
Building Beale B 313
1101 John Denie Road
Memphis, TN  38184

Dear Mr.

Thank you for your letter requesting information on Title 18.

In response to your inquiry, Congress was in session on June 1, 3, 4, 7-12 and 14-19, 1948, however, Title 18 was not voted on at this time. As you may know, Title 18 covers 845 pages in the U.S. Code and this wording was developed over many years. Signed copies of laws are archived at the National Archives and Records Administration and are not available to the public.

I hope that I have been of some assistance to you.  For future reference, most federal depository libraries possess this type of information.  For the depository library closest to you, please consult the Government Printing Office web site: www.gpo.gov/libraries.

With best wishes, I am

Sincerely,

Jeff Trandahl

JT/rs

Office of the Law Revision Counsel
U.S. House of Representatives
Washington, D.C. 20515

March 1, 2000

Dear

This is in response to your letter concerning Title 21 and the legal effect of that title not having been enacted into positive law. You ask two specific questions, the short answers to which are as follows:

1.  You are correct that Title 21 has not been enacted into positive law.
2.  Convictions under particular sections of Title 21 occur because it is the law of the land. Whether a title is positive or non-positive law relates to the ultimate evidentiary source for the text of a law, not to the legal effect of the provision.

Some background will help in clarifying the distinction between positive and non-positive law.

Official compilations of the laws of Congress are found in two sources: the United States Statutes at Large and the United States Code. The United States Statutes at Large, prepared by the Office of the Federal Register, provides a permanent collection of the laws of each session of Congress, chronologically arranged. They are legal evidence of the laws contained in them in any court. However, they are not easy to use because there is no attempt to arrange the laws according to their subject matter or to show the present status of an earlier law as it has been subsequently amended.

The United States Code, prepared by this Office, is a consolidation and compilation of the general and permanent laws of the United States arranged according to subject matter. It presents the permanent laws enacted by Congress in a concise and useable form by grouping them by their subject matter and by showing the present status of laws that have been amended on one or more occasions.



United States General Accounting Office
Washington, DC 20548

November 22, 2000

Dear

This is in response to your recent letter asking "has Title 21 of the U. S. Codes been enacted into positive law".

Our Office does not provide legal research services to the general public. We note, however, that Title 21 has not been enacted into "positive law", but is a codification of the statutes.

Sincerely yours,

*Kenneth R. Schutt*

Kenneth R. Schutt
Supervisory Adjudicator

84 STATUTE AT LARGE part 1 pp 1-1384, 91st Congress, 2nd session (21 USC §§801-960), fails to evidence that same is from an Act of Congress, fails to evidence an Enacting Clause, or Resolving Clause, and fails to evidence that same has been promulgated in the Federal Register in the Code of Federal Regulations (1C.F.R. §85), therefore same is restricted to application over and against corporate-federal Officers, Agents, and Employees, within the parameters of the District of Columbia, proof of the contrary having not been placed into evidence, certified true, correct and complete.  Congressional Record vol. 116 part 27 91st Congress Second Session, adjourned Wednesday, October 14,1970 and did not return until Monday, November 16, 1970, thus a misapplication of the Legislative Jurisdiction of the Federal Congress.  ·



**THE LIBRARY OF CONGRESS**
PHOTODUPLICATION SERVICE
WASHINGTON, D.C. 20540-4570

PHOTODUPLICATION SERVICE
202-707-5640 (VOICE)
202-707-1771 (FAX)
photoduplication@loc.gov (EMAIL)

THIS IS TO CERTIFY that the collections of the Library of Congress contain a publication entitled **CONGRESSIONAL RECORD: PROCEEDINGS AND DEBATES OF THE 91ST CONGRESS, SECOND SESSION, VOLUME 116–PART 27, OCTOBER 9, 1970, TO OCTOBER 14, 1970,** and that the attached photocopies – the title page, verso of the title page, and pages 36772 and 36970 – are a true representation from that work.

THIS IS TO CERTIFY FURTHER, that the publication is marked with a Library of Congress acquisition stamp that bears the date November 18, 1971.

IN WITNESS WHEREOF, the seal of the Library of Congress is affixed hereto on September 27, 2004.



By:   Sandra M. Lawson
Acting Chief
Library of Congress
Photoduplication Service

UNITED STATES  OF AMERICA

# Congressional Record

PROCEEDINGS AND DEBATES OF THE 91st CONGRESS
SECOND SESSION

## VOLUME 116—PART 27

OCTOBER 9, 1970, TO OCTOBER 14, 1970
(PAGES 35917 TO 37262)

UNITED STATES GOVERNMENT PRINTING OFFICE, WASHINGTON, 1970

who have buildings or structures registered in the National Register in order to preserve such historic properties, and for other purposes; to the Committee on Interior and Insular Affairs.

By Mr. ROE:
H.R. 19778. A bill to provide increased annuities under the Civil Service Retirement Act; to the Committee on Post Office and Civil Service.

By Mr. STRATTON:
H.R. 19779. A bill to amend title II of the Social Security Act to reduce from 72 to 70 the age at which deductions on account of an individual's outside earnings will cease to be made from benefits based on such individual's wage record; to the Committee on Ways and Means.

By Mr. BURTON of California:
H.R. 19780. A bill to authorize greater uniformity of treatment of recipients under the Federal-State adult public assistance programs and to otherwise improve such programs, and for other purposes; to the Committee on Ways and Means.

By Mr. BYRNE of Pennsylvania:
H.R. 19781. A bill to provide financial benefits for certain spouses and children who are physically handicapped or mentally retarded, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. HELSTOSKI:
H.R. 19782. A bill to establish a national urban bond program to provide an effective means of financing the construction of needed urban housing; to the Committee on Ways and Means.

By Mr. LONG of Maryland:
H.R. 19783. A bill to authorize the Army Corps of Engineers to collect and remove on a continuing basis accumulations of debris in the Susquehanna River; to the Committee on Public Works.

By Mr. SAYLOR:
H.R. 19784. A bill to designate certain lands as wilderness; to the Committee on Interior and Insular Affairs.

By Mr. REID of New York:
H.J. Res. 1401. Joint resolution granting the consent of Congress to the States of New Jersey and New York for certain amendments to the waterfront commission compact and for entering into the airport commission compact, and for other purposes; to the Committee on the Judiciary.

By Mr. GOODLING:
H.J. Res. 1402. Joint resolution proposing the establishment of the Dwight David Eisenhower Square in the District of Columbia; to the Committee on House Administration.

By Mr. BINGHAM (for himself, Mr. CLAY, Mr. NIX, Mr. LEGGETT, Mr. UDALL, Mr. KARTH, Mr. REES, Mr. OLSEN, Mr. ASHLEY, Mr. RYAN, Mr. HARRINGTON, Mr. OTTINGER, Mr. DADDARIO, Mr. DIGGS, Mrs. CHISHOLM, Mr. MOORHEAD, Mr. EDWARDS of California, Mr. RODINO, Mr. MOLLOHAN, Mr. MIKVA, Mr. HAWKINS, Mr. CONYERS, and Mr. STOKES):
H. Con. Res. 782. Concurrent resolution authorizing the placing of a bust or statue of Martin Luther King, Jr., in the Capitol; to the Committee on House Administration.

By Mr. BINGHAM (for himself, Mr. ANDERSON of Illinois, Mr. MEEDS, Mr. HORTON, Mr. FRASER, Mr. MORSE, Mr. ROSENTHAL, Mr. McCLOSKEY, Mr. COHELAN, and Mr. MOSHER):
H. Con. Res. 783. Concurrent resolution authorizing the placing of a bust or statue of Martin Luther King, Jr., in the Capitol; to the Committee on House Administration.

By Mr. HASTINGS (for himself, Mr. FREY, and Mr. WEICKER):
H. Res. 1254. Resolution relative to the FTS service; to the Committee on Veterans' Affairs.

By Mr. WYLIE:
H. Res. 1255. Resolution declaring that the House rejects the findings and recommendations of the Commission on Obscenity and Pornography; to the Committee on Education and Labor.

By Mr. PEPPER (for himself, Mr. ASHLEY, Mr. FRIEDEL, Mr. HARRINGTON, and Mr. SYMINGTON):
H. Res. 1256. Resolution on dismissal of professional air traffic controllers by the Federal Aviation Administration; to the Committee on Interstate and Foreign Commerce.

By Mr. RODINO:
H. Res. 1257. Resolution designating January 22 of each year as Ukrainian Independence Day; to the Committee on the Judiciary.

By Mr. WATSON:
H. Res. 1258. Resolution that the House of Representatives utterly reject and condemns the findings and recommendations of the Commission on Obscenity and Pornography and furthermore that the House of Representatives calls upon the President to reject the findings of said Commission; to the Committee on Education and Labor.

By Mr. LONG of Maryland:
H. Res. 1259. Resolution to welcome the American Association of Junior Colleges to Washington, D.C., for their 51st annual convention; to the Committee on the Judiciary.

PRIVATE BILLS AND RESOLUTIONS

Under clause 1 of rule XXII, private bills and resolutions were introduced and severally referred as follows:

By Mr. HALPERN:
H.R. 19785. A bill for the relief of Antonio de Leonardo; to the Committee on the Judiciary.

By Mr. HAMILTON:
H.R. 19786. A bill for the relief of Kim Hak Kyung; to the Committee on the Judiciary.

By Mr. PIKE:
H.R. 19787. A bill for the relief of Adriano Botelho Moniz; to the Committee on the Judiciary.

By Mr. SEBELIUS:
H.R. 19788. A bill for the relief of John C. Caldwell; to the Committee on the Judiciary.

By Mr. STEPHENS:
H.R. 19789. A bill for the relief of Youngdahl Song; to the Committee on the Judiciary.

---

# SENATE—*Wednesday, October 14, 1970*

The Senate met at 9 a.m. and was called to order by Hon. THOMAS F. EAGLETON, a Senator from the State of Missouri.

The Chaplain, the Reverend Edward L. R. Elson, D.D., offered the following prayer:

Eternal Father, who hast made and preserved us a Nation, guide us and all the people in the crucial decisions of the coming days. Let all that is done be well pleasing in Thy sight. In the tumult of our times and the convulsion of human society, help us to see Thee moving in the processes of history and presiding over our destiny.

"Breathe through the pulses of desire
Thy coolness and Thy balm;
Let sense be dumb, let flesh retire;
Speak through the earthquake, wind, and fire,
O still, small voice of calm!"—*Whittier.*

O Lord, watch over us all during our separation. Give Thy servants strength for the contests ahead, rest and renewal before returning. And may we have peace in our hearts, peace in our land, and peace in the world.

## DESIGNATION OF ACTING PRESIDENT PRO TEMPORE

The PRESIDING OFFICER. The clerk will please read a communication from the President pro tempore of the Senate (Mr. RUSSELL).

The legislative clerk read the following letter:

U.S. SENATE,
PRESIDENT PRO TEMPORE,
*Washington, D.C., October 14, 1970.*
To the Senate:
Being temporarily absent from the Senate, I appoint Hon. THOMAS F. EAGLETON, a Senator from the State of Missouri, to perform the duties of the Chair during my absence.
RICHARD B. RUSSELL,
*President pro tempore.*

Mr. EAGLETON thereupon took the chair as Acting President pro tempore.

## CALL OF THE ROLL

The ACTING PRESIDENT pro tempore. The Senate having adjourned in the absence of a quorum on October 13, 1970, the Chair directs the clerk to call the roll to ascertain the presence of a

The legislative clerk called the roll, and the following Senators answered to their names:

[No. 379 Leg.]

| | | |
|---|---|---|
| Allen | Hansen | Miller |
| Bible | Harris | Mondale |
| Boggs | Hart | Proxmire |
| Byrd, W. Va. | Holland | Ribicoff |
| Cook | Hughes | Saxbe |
| Cooper | Inouye | Schweiker |
| Cotton | Jackson | Spong |
| Dole | Jordan, N.C. | Stennis |
| Eagleton | Mansfield | Talmadge |
| Ervin | Mathias | Williams, Del. |
| Fulbright | McGovern | Young, Ohio |
| Griffin | McIntyre | |

Mr. BYRD of West Virginia. I announce that the Senator from North Dakota (Mr. BURDICK), the Senator from Nevada (Mr. CANNON), the Senator from California (Mr. CRANSTON), the Senator from Connecticut (Mr. DODD), the Senator from Tennessee (Mr. GORE), the Senator from Indiana (Mr. HARTKE), the Senator from Massachusetts (Mr. KENNEDY), the Senator from Minnesota (Mr. McCARTHY), the Senator from Wyoming (Mr. McGEE), the Senator from New Mexico (Mr. MONTOYA), the Senator from Utah (Mr. MOSS), the Senator from Maine (Mr. MUSKIE), the Senator from

## WITHDRAWAL

Executive nomination withdrawn from the Senate, October 14, 1970:

BOARD OF GOVERNORS OF THE U.S. POSTAL SERVICE

William J. Curtin, of Maryland, to be a member of the Board of Governors of the U.S. Postal Service for a term of 1 year, which was sent to the Senate on September 28, 1970.

## ADJOURNMENT UNTIL MONDAY, NOVEMBER 16, 1970

Mr. BYRD of West Virginia. Mr. President, if there be no further business to come before the Senate, I move, in accordance with the provisions of House Concurrent Resolution 774, that the Senate stand in adjournment until 12 o'clock meridian on Monday, November 16, 1970.

The motion was agreed to; and (at 4 o'clock and 7 minutes p.m.), under the provisions of House Concurrent Resolution 774, the Senate adjourned until Monday, November 16, 1970, at 12 o'clock meridian.

## NOMINATIONS

Executive nominations received by the Senate October 14, 1970:

BOARD OF GOVERNORS OF THE U.S. POSTAL SERVICE

Elmer T. Klassen, of Massachusetts, to be a member of the Board of Governors of the U.S. Postal Service for a term of 1 year; new position.

U.S. ARMY

The following-named officers for temporary appointment in the Army of the United States to the grades indicated under the provisions of title 10, United, States Code, sections 3442 and 3447:

*To be major general, Medical Corps*

Brig. Gen. William Henry Moncrief, Jr., 251–64–2082, Army of the United States (colonel, Medical Corps, U.S. Army).

*To be brigadier general, Medical Corps*

Col. William Hyde Meroney III, 246–07–1982, Medical Corps, U.S. Army.

The following-named officers for appointment in the Regular Army of the United States to the grade indicated, under the provisions of title 10, United States Code, sections 3284 and 3306:

*To be brigadier general, Medical Corps*

Brig. Gen. Robert Morris Hardaway III; 586–60–4321, Army of the United States (colonel, Medical Corps, U.S. Army).

Brig. Gen. Edward Henry Vogel, Jr., 453–16–5528, Army of the United States (colonel, Medical Corps, U.S. Army).

Brig. Gen. William Henry Moncrief, Jr., 251–64–2082, Army of the United States (colonel, Medical Corps, U.S. Army).

Maj. Gen. Spurgeon Hart Neel, Jr., 415–09–2779, Army of the United States (colonel, Medical Corps, U.S. Army).

## CONFIRMATIONS

Executive nominations confirmed by the Senate October 14, 1970:

U.S. ARMY

The following-named officer to be placed on the retired list, in grade indicated, under the provisions of title 10, United States Code, section 3962:

*To be lieutenant general*

Lt. Gen. Jonathan Owen Seaman, 224–52–3830, Army of the United States (major general, U.S. Army).

The following-named officers to be placed on the retired list, in grades indicated, under the provisions of title 10, United, States Code, section 3962:

*To be general*

Gen. Ferdinand Joseph Chesarek, 224–52–4856, Army of the United States (major general, U.S. Army).

*To be lieutenant general*

Lt. Gen. Austin Wortham Betts, 081–32–5961, Army of the United States (major general, U.S. Army).

U.S. NAVY

Vice Adm. Jackson D. Arnold, U.S. Navy, having been designated for commands and other duties determined by the President to be within the contemplation of title 10, United States Code, section 5231, for appointment to the grade of admiral while so serving.

U.S. AIR FORCE

The nominations beginning George B. Aaron, to be major, and ending Phillip A. Johnson, to be first lieutenant, which nominations were received by the Senate and appeared in the Congressional Record on Sept. 24, 1970.

UNESCO CONFERENCE REPRESENTATIVES

The following-named persons to be representatives of the United States of America to the 16th session of the General Conference of the United Nations Educational, Scientific, and Cultural Organization:

John Richardson, Jr., of Virginia.
Louise Gore, of Maryland.
Pierre R. Graham, of Illinois.
Harold Taft King, of Colorado.
Kimon T. Karabassos, of Virginia.

The following-named persons to be alternate representatives of the United States of America to the 16th session of the General Conference of the United Nations Educational, Scientific, and Cultural Organization:

Edward T. Brennan, of Massachusetts.
Edward O. Sullivan, Jr., of New York.
R. Miller Upton, of Wisconsin.
Tom R. Van Sickle, of Kansas.

---

# EXTENSIONS OF REMARKS

ADDRESS BY SENATOR JENNINGS RANDOLPH TO THE AMERICAN FORESTRY ASSOCIATION

## HON. LEE METCALF

### OF MONTANA

IN THE SENATE OF THE UNITED STATES

*Tuesday, October 13, 1970*

Mr. METCALF. Mr. President, "clearcutting" is a type of logging practice which is used by our public land management agencies, the Forest Service and the Bureau of Land Management. It refers to the total removal of all timber and other vegetation from a plot of land, usually followed by burning and reforestation. It is a practice which is coming under increasing opposition from concerned groups all over the country.

The word "clearcutting" is very descriptive in terms of what the countryside looks like after being subjected to this practice. The scene is one of total devastation, more like the site of a military Armageddon than that of a placid national forest. Literally nothing remains but rows of gouging "terraces" in the hillside. Anyone who knows the beauty of a forest cannot avoid a feeling of dis-

Why then allow clearcutting at all? Many conservationists, outdoorsmen, residents of affected communities, and foresters themselves are beginning to ask this question with increasing insistency. The answers which are forthcoming are not wholly satisfying, although they reveal the issue to be a complex one. The subject remains an issue of hot debate among foresters and among the public at large.

In response to the widespread public concern with this practice, many responsible public officials have asked the Federal agencies involved for a reexamination of clearcutting. The senior Senator from West Virginia (Mr. RANDOLPH) has been a leader in bringing this issue to the attention of responsible agencies.

Senator RANDOLPH has recently made a definitive statement on the subject in an address to the 95th annual conference of the American Forestry Association in Atlanta, Ga. He describes the experience of his own State of West Virginia with clearcutting, and the response of Forest Service to his request for a review. And he calls for further review by the Council on Environmental Quality for the creation of a National Forest Management Commission to oversee the

This problem is, of course, not limited to our eastern forests. It is a national issue and is of particular concern to the people of the Western States, where fragile mountain soils make up the foundation for the evergreen forests of the Rocky Mountains. Here the same practice is applied to different conditions. And the results in many cases have been equally unpleasant.

For the past several years clearcutting has been carried out on a large scale in the Bitterroot Valley of Montana to the extent that public indignation rose. Senator MANSFIELD, Representative OLSEN, and I requested that the Forest Service review the clearcutting policies in the area. The Forest Service appointed a task force and gave it the broad assignment of examining the entire spectrum of forest management in the Bitterroot Valley. In the resulting study, which was released in May of this year, the task force criticized clearcutting and overcutting as it had been practiced in several parts of the area under study. It cited four goals to be pursued in future forest management plans:

First. Any lingering thought that production goals hold priority over quality of environment be erased.



**THE LIBRARY OF CONGRESS**
PHOTODUPLICATION SERVICE
WASHINGTON, D.C. 20540-4570

**PHOTODUPLICATION SERVICE**
202-707-5640 (VOICE)
202-707-1771 (FAX)
photoduplication@loc.gov (EMAIL)

THIS IS TO CERTIFY that the collections of the Library of Congress contain a publication entitled **UNITED STATES STATUTES AT LARGE CONTAINING THE LAWS AND CONCURRENT RESOLUTIONS ENACTED DURING THE SECOND SESSION OF THE NINETY-FIRST CONGRESS OF THE UNITED STATES OF AMERICA, 1970-1971, AND REORGANIZATION PLANS AND PROCLAMATIONS, VOLUME 84, PART 1** and that the attached photocopies – the title page and page 1236 – are a true representation from that publication.

IN WITNESS WHEREOF, the seal of the Library of Congress is affixed hereto on October 4, 2004.



By: Sandra M. Lawson
Acting Chief
Library of Congress
Photoduplication Service

# UNITED STATES
# STATUTES AT LARGE

CONTAINING THE

LAWS AND CONCURRENT RESOLUTIONS
ENACTED DURING THE SECOND SESSION OF THE
NINETY-FIRST CONGRESS
OF THE UNITED STATES OF AMERICA

# 1970—1971

AND

REORGANIZATION PLANS AND PROCLAMATIONS

———

## VOLUME 84

IN TWO PARTS

———

## PART 1

PUBLIC LAWS 91–191 THROUGH 91–525



UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1971

1236

Public Law 91-513

AN ACT

October 27, 1970
[H. R. 18583]

To amend the Public Health Service Act and other laws to provide increased research into, and prevention of, drug abuse and drug dependence; to provide for treatment and rehabilitation of drug abusers and drug dependent persons; and to strengthen existing law enforcement authority in the field of drug abuse.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That this Act may be cited as the "Comprehensive Drug Abuse Prevention and Control Act of 1970".

Comprehensive Drug Abuse Prevention and Control Act of 1970.

## TABLE OF CONTENTS

### TITLE I—REHABILITATION PROGRAMS RELATING TO DRUG ABUSE

Sec. 1. Programs under Community Mental Health Centers Act relating to drug abuse.
Sec. 2. Broader treatment authority in Public Health Service hospitals for persons with drug abuse and other drug dependence problems.
Sec. 3. Research under the Public Health Service Act in drug use, abuse, and addiction.
Sec. 4. Medical treatment of narcotic addiction.

### TITLE II—CONTROL AND ENFORCEMENT

PART A—SHORT TITLE; FINDINGS AND DECLARATION; DEFINITIONS

Sec. 100. Short title.
Sec. 101. Findings and declarations.
Sec. 102. Definitions.
Sec. 103. Increased numbers of enforcement personnel.

PART B—AUTHORITY TO CONTROL; STANDARDS AND SCHEDULES

Sec. 201. Authority and criteria for classification of substances.
Sec. 202. Schedules of controlled substances.

PART C—REGISTRATION OF MANUFACTURERS, DISTRIBUTORS, AND DISPENSERS OF CONTROLLED SUBSTANCES

Sec. 301. Rules and regulations.
Sec. 302. Persons required to register.
Sec. 303. Registration requirements.
Sec. 304. Denial, revocation, or suspension of registration.
Sec. 305. Labeling and packaging requirements.
Sec. 306. Quotas applicable to certain substances.
Sec. 307. Records and reports of registrants.
Sec. 308. Order forms.
Sec. 309. Prescriptions.

PART D—OFFENSES AND PENALTIES

Sec. 401. Prohibited acts A—penalties.
Sec. 402. Prohibited acts B—penalties.
Sec. 403. Prohibited acts C—penalties.
Sec. 404. Penalty for simple possession; conditional discharge and expunging of records for first offense.
Sec. 405. Distribution to persons under age twenty-one.
Sec. 406. Attempt and conspiracy.
Sec. 407. Additional penalties.
Sec. 408. Continuing criminal enterprise.
Sec. 409. Dangerous special drug offender sentencing.
Sec. 410. Information for sentencing.
Sec. 411. Proceedings to establish previous convictions.

Congressional Record vol. 116 part 27 91st Congress, Second Session
adjourned Wednesday, October 14,1970 and not to return until Monday,
November 16, 1970, thus it was not the Federal Congress, as required by
Law, who 'enacted' the above-cited title.





## THE LIBRARY OF CONGRESS
PHOTODUPLICATION SERVICE
WASHINGTON, D.C. 20540-4570

**PHOTODUPLICATION SERVICE**
202-707-5640 (VOICE)
202-707-1771 (FAX)
photoduplication@loc.gov (EMAIL)

THIS IS TO CERTIFY that the collections of the Library of Congress contain a publication entitled **CONGRESSIONAL RECORD: PROCEEDINGS AND DEBATES OF THE 91ST CONGRESS, SECOND SESSION, VOLUME 116–PART 28, NOVEMBER 16, 1970, TO NOVEMBER 23, 1970,** and that the attached photocopies – the title page, verso of the title page, and page 37263 -- are a true representation from that work.

THIS IS TO CERTIFY FURTHER, that the publication is marked with a Library of Congress acquisition stamp that bears the date January 28, 1972.

IN WITNESS WHEREOF, the seal of the Library of Congress is affixed hereto on September 27, 2004.

By:   Sandra M. Lawson
Acting Chief
Library of Congress
Photoduplication Service



UNITED STATES

OF AMERICA

# Congressional Record

PROCEEDINGS AND DEBATES OF THE 91st CONGRESS
SECOND SESSION

## VOLUME 116—PART 28

NOVEMBER 16, 1970, TO NOVEMBER 23, 1970
PAGES 37263 TO 38592

UNITED STATES GOVERNMENT PRINTING OFFICE, WASHINGTON, 1970



# Congressional Record

**United States of America**

PROCEEDINGS AND DEBATES OF THE 91ˢᵗ CONGRESS, SECOND SESSION

## SENATE—Monday, November 16, 1970

The Senate met at 12 o'clock meridian and was called to order by the Vice President.

The Chaplain, the Reverend Edward L. R. Elson, D.D., offered the following prayer:

O God, by whose providence we have been brought to this hour, we thank Thee for Thy guiding hand upon the Nation and Thy care of those who serve Thee in this place. As we renew our work may we renew our faith in Thee.

God of our fathers and our God, we beseech Thee to draw together the diverse and discordant elements of the Nation into one united people strong in the Lord and in the power of His might. May every victory be sanctified by deeper devotion. May every defeat be redeemed by a fresh commitment to a holier servanthood. Sweep away all bitterness, heal hurt spirits, restore broken friendships, and in reconciliation and warm comradeship may the people be blessed with wise leadership.

May a mighty tide of the spirit sweep over the Nation for moral regeneration and renewal. Make us one in purpose and dedication for the healing of the nations and the making of peace with mercy and justice. To Thy servants here give abundant grace to lift high the banner of freedom and peace for all mankind.

Through Him whose love never fails. Amen.

## MESSAGES FROM THE HOUSE RECEIVED DURING ADJOURNMENT

Under authority of the order of the Senate of October 14, 1970, the Secretary of the Senate received the following messages from the House of Representatives:

On October 15, 1970:

That the House had agreed to the amendments of the Senate to the following bills:

H.R. 4182. An act to authorize voluntary admission of patients to the District of Columbia institution providing care, education, and treatment of mentally retarded persons; and

H.R. 18086. An act to authorize the Commissioner of the District of Columbia to sell or exchange certain real property owned by the District in Prince William County, Va.

On October 16, 1970:

That the Speaker had affixed his signature to the following enrolled bills, and they were signed by the Vice President on October 21, 1970, under authority of H. Con. Res. 557, as amended:

S. 2755. An act for the relief of Donal N. O'Callaghan;

CXVI——2347—Part 28

S. 2846. An act to amend the Mental Retardation Facilities and Community Mental Health Centers Construction Act of 1963 to assist the States in developing a plan for the provision of comprehensive services to persons affected by mental retardation and other developmental disabilities originating in childhood, to assist the States in the provision of such services in accordance with such plan, to assist in the construction of facilities to provide the services needed to carry out such plan, and for other purposes;

S. 3116. An act to authorize each of the Five Civilized Tribes of Oklahoma to popularly select their principal officer, and for other purposes;

S. 3586. An act to amend title VII of the Public Health Service Act to establish eligibility of new schools of medicine, dentistry, osteopathy, pharmacy, optometry, veterinary medicine, and podiatry for institutional grants under section 771 thereof, to extend and improve the program relating to training of personnel in the allied health professions, and for other purposes;

H.R. 4182. An act to authorize voluntary admission of patients to the District of Columbia institution providing care, education, and treatment of substantially retarded persons;

H.R. 6240. An act to amend the act entitled "An act authorizing the village of Baudette, State of Minnesota, its public successors or public assigns, to construct, maintain, and operate a toll bridge across the Rainy River at or near Baudette, Minnesota," approved December 21, 1950;

H.R. 9311. An act to declare that certain lands shall be held by the United States in trust for the Makah Indian Tribe, Washington;

H.R. 12475. An act to revise and clarify the Federal Aid in Wildlife Restoration Act and the Federal Aid in Fish Restoration Act, and for other purposes;

H.R. 14678. An act to strengthen the penalties for illegal fishing in the territorial waters and the contiguous fishery zone of the United States, and for other purposes;

H.R. 15069. An act to authorize the Thousand Islands Bridge Authority to construct, maintain, and operate an additional toll bridge across the St. Lawrence River at or near Cape Vincent, N.Y.;

H.R. 16710. An act to amend chapter 37 of title 38, United States Code, to authorize guaranteed and direct loans to eligible veterans for mobile homes and lots therefor if used as permanent dwellings, to remove the time limitation on the use of entitlement to benefits under such chapter, and to restore such entitlements which have lapsed prior to use or expiration, to eliminate the guaranteed and direct loan fee collected under such chapter, and for other purposes;

H.R. 16811. An act to authorize the Secretary of the Interior to declare that the United States holds in trust for the Eastern Band of Cherokee Indians of North Carolina certain lands on the Cherokee Indian Reservation heretofore used for school or other purposes;

H.R. 17570. An act to amend titles III and IX of the Public Health Service Act so as to revise, extend, and improve the programs of research, investigation, education, training, and demonstrations authorized thereunder, and for other purposes;

H.R. 17849. An act to provide financial assistance for and establishment of a national rail passenger system, to provide for the modernization of railroad passenger equipment, to authorize the prescribing of minimum standards for railroad passenger service, to amend section 13a of the Interstate Commerce Act, and for other purposes;

H.R. 18086. An act to authorize the Commissioner of the District of Columbia to sell or exchange certain real property owned by the District in Prince William County, Virginia;

H.R. 18260. An act to authorize the United States Commissioner of Education to establish education programs to encourage understanding of policies, and support of activities, designed to enhance environmental quality and maintain ecological balance;

H.R. 18298. An act to amend the Central Valley reclamation project to include Black Butte project; and

H.R. 18583. An act to amend the Public Health Service Act and other laws to provide increased research into, and prevention of, drug abuse and drug dependence; to provide for treatment and rehabilitation of drug abusers and drug dependent persons; and to strengthen existing law enforcement authority in the field of drug abuse.

## ENROLLED BILLS PRESENTED

The Secretary of the Senate announced that, on October 21, 1970, he presented to the President of the United States the following enrolled bills:

S. 2755. An act for the relief of Donald N. O'Callaghan;

S. 2846. An act to amend the Mental Retardation Facilities and Community Mental Health Centers Construction Act of 1969 to assist the States in developing a plan for the provision of comprehensive services to persons affected by mental retardation and other developmental disabilities originating in childhood, to assist the States in the provision of such services in accordance with such plan, to assist in the construction of facilities to provide the services needed to carry out such plan, and for other purposes;

S. 3116. An act to authorize each of the Five Civilized Tribes of Oklahoma to popularly select their principal officer, and for other purposes; and

S. 3586. An act to amend title VII of the Public Health Service Act to establish eligibility of new schools of medicine, dentistry, osteopathy, pharmacy, optometry, veterinary medicine, and podiatry for institutional grants under section 771 thereof, to extend and improve the program relating to training of personnel in the allied health professions, and for other purposes.

## CERTIFICATE OF SERVICE

I, Oscar Noel Fuentes, HEREBY CERTIFY, that In the Nature of 28 U.S.C. §1254(2), and Supreme Court Rule 29-4(a) and (b), and 28 U.S.C. §2403, the petitioner serves a conformed copy of the foregoing and attached documents (Exhibits) upon the Solicitor General of the United States as required when a question of Law concerning the Constitutionality or legitimate application of an un-enacted Congressional Act is called into question.

Petitioner avers under penalty of perjury in the nature of 28 U.S.C. §1746(1), that a True and Correct copy of; Petition for Common Law Writ of Habeas Corpus, Application for Common Law Writ of Habeas Corpus, Memorandum of Law with Incorporated Points and Authorities, Judicial Notice, Administrative and Quasi-Judicial Notice via Show Cause Order and Exhibits, has been deposited into U.S. Mail, on this _19_ day of _Nov_ , 2007, with sufficient First Class Postage affixed and properly addressed to:

> **Solicitor General of the United States**
> **U.S. Department of Justice, Room 5614**
> **c/o Paul D. Clement**
> **950 Pennsylvania Avenue, NW**
> **Washington , DC 20530-0001**
>
> C.   7006 2760 0000 6182 4234

_Oscar Noel Fuentes_
Oscar Noel Fuentes, Petitioner Pro-se.

**1 of 1 - Certificate of Service**